191 N.J. Super. 590 (1983)
468 A.2d 721
FREDERIC S. GRAY, PLAINTIFF-RESPONDENT,
v.
COMMERCIAL UNION INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1983.
Decided November 14, 1983.
*592 Before Judges MICHELS, KING and DREIER.
Richard C. Mariani argued the cause for appellant (Apruzzese & McDermott, attorneys; Richard C. Mariani and Charles F. Waskevich, Jr., of counsel).
Robert F. Colquhoun argued the cause for respondent (Colquhoun & Colquhoun, attorneys; Robert F. Colquhoun, II of, counsel).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Pursuant to leave granted by this court, defendant Commercial Union Insurance Company (Commercial Union) appeals from an order of the Law Division that denied its motion to disqualify Robert F. Colquhoun (Colquhoun) and the firm in which he is a member from representing plaintiff Frederic S. Gray (Gray) in this matter. Commercial Union contends that Colquhoun is barred from representing Gray by DR 4-101 and DR 5-105 of the Disciplinary Rules of the Code of Professional Responsibility of the American Bar Association, operative in New Jersey by incorporation into our court rules. See R. 1:14. We agree and reverse.
*593 Colquhoun, a member of the New Jersey bar, was retained and employed by Commercial Union from 1961 through the time of this matter. With one exception, each retention and employment involved defending Commercial Union's insureds in personal injury litigation. The one exception was a case in which Colquhoun represented Commercial Union directly in a lawsuit against another insurance company, which had sought to hold Commercial Union liable as an excess insurer. The parties dispute the extent of Colquhoun's access to Commercial Union's confidences during this period. Commercial Union's assistant house counsel maintains that Colquhoun worked regularly with company officials in its West Orange and Livingston, New Jersey offices. It is asserted that in this position Colquhoun "was privy to confidential and proprietary information of [Commercial Union], including its claims and litigation philosophy and its methods and procedures in handling and defending claims and litigation, and had access to individuals and information regarding the administration of various of defendant's business operations." Colquhoun argues to the contrary that he "was never made privy to any confidential or proprietary information of (Commercial Union)," he was "unaware that they had a claim or litigation philosophy," and that he did not receive any information "regarding the administration of various of defendant's business operations." In the late 1970's Commercial Union stopped assigning cases to Colquhoun. However, Colquhoun retained those cases still pending and was paid legal fees through 1982 by Commercial Union. At the time of the ruling here under review, Colquhoun was retained by Commercial Union only in connection with the defense of one personal injury suit which apparently is still pending on appeal.
In this action Gray, the New Jersey regional claims manager, charges that Commercial Union breached his contract of employment by engaging in a "planned and settled scheme" to deprive him and other senior employees of their future and benefits and by discharging him without cause. Gray also charges that after Employers' Liability Assurance Corporation, Ltd. merged with *594 Commercial Union, thereafter dominating the management of the merged companies, Commercial Union entered into a program of discrimination against all pre-merger Commercial Union employees, including him. Specifically, Gray maintains that by implementing various corporate policies relating to such areas as personal reductions, unwarranted increases in casualty reserves and demand for dismissal of persons approaching retirement age, Commercial Union embarked upon "a scheme and plan to render effective claims handling impossible [which] was utilized against original [Commercial Union] personnel to effect their elimination."
The pivotal issue posed on this appeal is under what circumstances a lawyer may represent a client whose interest is adverse to a party whom the lawyer represented in a prior litigation. The governing principles are set forth in DR 4-101, which reads:
Preservation of Confidences and Secrets of a Client.
(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.
(B) Except as permitted by DR 4-101(C), a lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client.
(2) Use a confidence or secret of his client to the disadvantage of the client.
(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
(C) A lawyer may reveal:
(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.
(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.
(3) The intention of his client to commit a crime and the information necessary to prevent the crime.
(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.
(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4-101(C) through an employee.
*595 The application of DR 4-101 to a lawyer whose client brings an action against a former client is discussed in the exhaustive and scholarly opinion in Reardon v. Marlayne, Inc., 83 N.J. 460, 472-474 (1980). The court summarized its holding therein by stating that:
[W]hen a motion to disqualify an attorney is instituted by his former client to enforce the principles that an attorney must protect the confidences of a client and avoid even the appearance of impropriety, the former client must establish the following:
(1) a prior attorney-client relationship between the former client and the attorney sought to be disqualified;
(2) a substantial relationship or a reasonable perception, from the public's perspective, of a substantial relationship between the subject matter of the present suit and that of cases worked on during the former representation;
(3) access to relevant confidences of the former client, which may be proven by other than direct evidence, leading to a conclusive presumption of the attorney's knowledge of such confidences. [at 474].
The court in Reardon emphasized that "[i]f there be any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification." At 471. See In re Opinion No. 415, 81 N.J. 318, 324 (1979); see also State v. Rizzo, 69 N.J. 28, 30 (1975); State v. Galati, 64 N.J. 572, 576-577 (1974). This principle conforms to DR 9-101, which cautions a lawyer to avoid "even the appearance of professional impropriety." The reason for this rule is explained in the oft-cited case of Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562, 570-571 (2 Cir.1973).
Applying the foregoing standards here, it is evident that neither Colquhoun nor any members of the firm in which he is a member can properly represent Gray in this action against Commercial Union. First, there is no dispute that Colquhoun maintained an attorney-client relationship with Commercial Union. Colquhoun's argument, that he did not have a "true" attorney-client relationship with Commercial Union because his professional duty ran to the latter's insureds and not the insurer itself cannot withstand scrutiny. Concededly, it can be said that "[t]hese interrelationships among a liability insurer, its insured, and the attorney chosen by the insurer to represent the insured, *596 are sui generis. The canons and disciplinary rules do not address themselves frankly and explicitly to this special set of relationships, and there is awkwardness in attempts to apply the canons and rules." Moritz v. Medical Protective Co., 428 F. Supp. 865, 872 (W.D.Wis. 1977), quoted in American Bar Foundation, Annotated Code of Professional Responsibility 169 (1979). Nonetheless, this ambiguity exists only as to instances of a conflict of interest between the insurer and the insured, which raise the question of the lawyer's primary allegiance. There is no dispute that as a fundamental proposition a defense lawyer is counsel to both the insurer and the insured. See Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 338 (1980); Bartels v. Romano, 171 N.J. Super. 23, 29 (App.Div. 1979); N.J. Advisory Committee on Professional Ethics, Opinions 165, 166. He owes to each a duty to preserve the confidences and secrets imparted to him during the course of representation.
Secondly, there is, or at the very least, there appears to be a "substantial relationship" between the subject matter of the present action and the subject matter of the cases previously handled by Colquhoun for Commercial Union. Obviously, the legal issues in the present employment contract case are not precisely the same legal issues in the personal injury cases Colquhoun defended. However, the "substantial relationship" standard should not be read in a mechanical or overly technical manner. As pointed out in Reardon, the requirement of substantial relationship of issues is satisfied where the "adversity between the interests of the attorney's former and present clients ... has created a climate for disclosure of relevant confidential information." Reardon v. Marlayne, Inc., supra 83 N.J. at 472 (quoting Note, "Attorney's Conflict of Interests: Representation of Interest Adverse to That of Former Client," 55 B.U.L.Rev. 61, 73 (1975). Therefore, under Reardon, if the prior representation was of a type that would give the appearance that the lawyer learned and has reason to disclose his former client's confidences, "the lack of identity between the cases will not pose a barrier to disqualification." Ibid. (citing *597 Motor Mart Inc. v. Saab Motors, Inc., 359 F. Supp. 156, 158 (S.D.N.Y. 1973)).
It may not be seriously disputed that as a result of his 20 years as one of Commercial Union's lawyers, Colquhoun has obtained confidential information and possesses knowledge of certain internal policies of Commercial Union that he will be able to use against it in the Gray litigation. According to Gray's complaint, (1) Commercial Union's management opposed certain changes he made in the operation of the New Jersey claims department and retaliated by forcing him out of his job and (2) Commercial Union determined to drive out all pre-merger personnel "by making policies of personnel reduction [and] unwarranted increases in casualty reserves." Both of these charges rest upon factual allegations regarding the operation of Commercial Union's New Jersey claims department. It is exactly these facts to which Colquhoun was privy during his 20 years of defending claims for Commercial Union. As one of Commercial Union's New Jersey counsel, it is difficult to conceive that Colquhoun would not have become familiar with the structure, operation and policies of its claims department. To the contrary, Commercial Union has established that as pointed out above, "Colquhoun was privy to confidential and proprietary information of [Commercial Union], including its claims and litigation philosophy and its methods and procedure in handling of defending claims and litigation, and had access to individuals and information regarding the administration of various of [Commercial Union's] business operations." Furthermore, Colquhoun's position as one of Commercial Union's defense lawyers surely involved recommending settlement limits and negotiating settlements. Colquhoun thus necessarily became familiar with "such useful information as the strengths and weaknesses of this corporate client's decision makers [and] their attitude towards settlement." See Reardon, supra 83 N.J. at 476. Although this general information may not be specifically relevant to the merits of the Gray-Commercial Union dispute, it constitutes *598 secrets or confidences of the former client that could be used against it to its substantial disadvantage.
The third and final requirement established by the Reardon court  that the lawyer in fact had access to the confidences of his former client during the time he represented them  clearly has been met in this case. Colquhoun's argument that he did not have access to relevant information such as management's employment practices towards former employees on policies relating to personnel reduction, casualty reserves and retirement does not provide a valid basis to permit him to continue to represent Gray in this matter. When access to secrets and confidential information exists, as it did here, the court will presume that the lawyer in fact learned such secrets and confidences, notwithstanding the lawyer's protest to the contrary. See Id. at 473. In this regard, we repeat what our Supreme Court stated in In re Braun, 49 N.J. 16 (1967), concerning the content of former Canon 6 (now included in DR 5-101 and DR 5-105) and former Canon 37 (now included in DR 4-101(B)):
The factual contention of respondent that no actual confidence was received is without merit even if true. The intent of Canons 6 and 37 is violated whenever the conduct of an attorney raises the possibility that he has or may use the confidences of one client for the benefit of another. [at 18; see also In re Blatt, 42 N.J. 522, 524 (1964)].
We hold therefore that Colquhoun and the law firm of which he is a member are disqualified from representing Gray in this matter by virtue of the fact that such representation constitutes a violation of DR 4-101.
Beyond this, there is another reason here to disqualify Colquhoun and his law firm. It is unethical for a lawyer to represent a plaintiff in a lawsuit brought against a party whom the lawyer represents on other matters, even if the two representations are unrelated. DR 5-105 provides:
Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer
(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be *599 adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).
(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).
(C) In situations covered by DR 5-105(A) and (B) except as prohibited by rule, opinion, directive, or statute, a lawyer may represent multiple clients if he believes that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the facts and of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.
(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment.
As was explained by our Supreme Court in In re Dolan, 76 N.J. 1 (1978),
The sense of our rules is that an attorney owes complete and undivided loyalty to the client who has retained him. The attorney should be able to advise the client in such a way as to protect the client's interests, utilizing his professional training, ability and judgment to the utmost. Consequently, if any conflicting interest could arise which would stand in the way of that kind of unstinting zeal, then the client must be so informed and the attorney may continue his limited representation only with the client's informed consent. [at 9]
The Supreme Court Advisory Committee on Professional Ethics has held consistently that a lawyer may not represent the adversary of one of his present clients. In Opinion 282, 97 N.J.L.J. 362 (1974), the lawyer was asked to represent a woman in a slander action while representing the husband of the accused slanderer in a workers' compensation case. In recommending that the attorney withdraw from further representation of the plaintiff in the slander case, the committee stated:
In the present inquiry both cases are still pending. The public would not understand how an attorney can sue a woman and at the same time represent the woman's husband in another proceeding. The attorney's action would be viewed with suspicion. Attorneys must avoid the appearance of wrongdoing. It is the appearance of a conflict which renders the representation of the wife in the slander action objectionable. Where a doubt exists as to the propriety of representing plaintiff-wife under these circumstances, the doubt should be resolved against accepting the retainer.
Similarly, in Opinion 301, 98 N.J.L.J. 209 (1975), the defense lawyer in a forgery action was placed in the position of having *600 to file a third-party complaint against a bank that his former firm had represented and that he continued to represent on a few unrelated matters. The committee found this to be unethical, stating flatly that "a lawyer should not take a case against his own client," even with full disclosure and full consent. As set forth therein:
Accordingly, it is our opinion that it is not professionally advisable for the inquirer to represent the same client both as advocate and adversary even if the cases are unrelated, and even if there are full disclosure and full consent. We feel that if the depository bank is brought into the proceedings as a third-party defendant a definite conflict of interest would be presented and that it would be inappropriate for the attorney to continue to represent the two clients.
Based on all of the foregoing and following the same reasoning, we conclude that there is a conflict which requires counsel to arrange for a substitution.
Finally, we note the case of International Business Machines Corp. v. Levin, 579 F.2d 271 (3 Cir.1978), which arose in District Court for the District of New Jersey. The law firm in that case sought to represent the plaintiff in a private antitrust lawsuit against I.B.M., which retained the firm in labor and other matters unrelated to the antitrust suit. Judge Meanor in the District Court disqualified the law firm from the antitrust case and the Court of Appeals affirmed, stating:
CBM argues that clauses (A) and (B) of DR 5-105 are not applicable since no effect adverse to IBM resulted from CBM's concurrent representation of both IBM and the plaintiffs and no adverse effect on CBM's exercise of its independent professional judgment on behalf of IBM was likely to result from CBM's representation of these clients in two entirely unrelated areas. Since clauses (A) and (B) do not apply, CBM argues, the consent requirement of clause (C) of DR 5-105 also is not applicable.
We think that CBM takes too narrow a view of the meaning of the phrase "adversely affected" in clauses (A) and (B), and that a somewhat more generous interpretation is called for. The rule does not define the nature or extent of the adverse effect contemplated on the attorney's exercise of independent judgment. However, DR 5-105(C) makes clear that situations entailing the likelihood of an adverse effect include circumstances in which such an effect may be minor permitting the performance of adequate services in spite of it. In those cases the multiple representation may take place if the attorney believes in good faith that he can adequately represent both clients and if the consent of the clients is obtained.
We think, however, that it is likely that some "adverse effect" on an attorney's exercise of his independent judgment on behalf of a client may result from the attorney's adversary posture toward that client in another legal matter. *601 See Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1386-1387 (2 Cir.1976); Grievance Committee of the Bar of Hartford County v. Rottner, 152 Conn. 59, 65, 203 A.2d 82, 84 (1964); Advisory Committee on Professional Ethics of the Supreme Court of New Jersey, Opinion No. 282, 97 N.J.L.J. 362 (1974), and Opinion No. 301, 98 N.J.L.J. 209 (1975). For example, a possible effect on the quality of the attorney's services on behalf of the client being sued may be a diminution in the vigor of his representation of the client in the other matter. See Cinema 5, Ltd. v. Cinerama, Inc., supra at 1387. A serious effect on the attorney-client relationship may follow if the client discovers from a source other than the attorney that he is being sued in a different matter by the attorney. The fact that a deleterious result cannot be identified subsequently as having actually occurred does not refute the existence of a likelihood of its occurrence, depending upon the facts and circumstances, at the time the decision was made to represent the client without having obtained his consent.
The cases relied upon by CBM do not support its argument that the code rule can never be violated by concurrent representation of several clients absent a showing of a relationship in the subject matter of the multiple representation. Most of the cases cited by CBM concern instances where ethical improprieties were found and are, therefore, not authority here. In Moritz v. Medical Protective Co., 428 F.Supp. 865 (W.D.Wis. 1977), the challenge to multiple representation came from a former and not a current client. But as the Court of Appeals for the Second Circuit stated in Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384 (2 Cir.1976), in connection with the prosecution of a lawsuit by an attorney or his partner against an actively represented client as opposed to a former one, "The propriety of this conduct must be measured not so much against the similarities in litigation as against the duty of undivided loyalty which an attorney owes to each of his clients." 528 F.2d at 1386. The case of City of Cleveland v. Cleveland Electric Illuminating Co., 440 F. Supp. 193 (N.D.Ohio 1976), aff'd 573 F.2d 1310 (6 Cir.1977), cert. denied, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978), also cited by CBM, involves a waiver of objections to an attorney's continuing representation of another client and is, therefore, also not apposite.
An attorney must be cautious in this area and, if he is to adhere to the high standards of professional responsibility, he must resolve all doubts in favor of full disclosure to a client of the facts of the attorney's concurrent representation of another client in a lawsuit against him. As the Second Circuit Court of Appeals has stated, "Putting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned." Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1386 (1976). [at 280].
Thus, it is clearly the rule that a lawyer may not represent the plaintiff in a lawsuit against another of his clients, which is precisely what Colquhoun here proposed to do.
*602 Finally, we deem it appropriate to repeat once more that when dealing with matters involving a claimed conflict of interest and breach of confidence
... a lawyer must avoid even the appearance of impropriety, DR 9-101, to the end that the image of disinterested justice is not impoverished or tainted. Thus it is that sometimes an attorney, guiltless in any actual sense, nevertheless is required to stand aside for the sake of public confidence in the probity of the administration of justice. [State v. Rizzo, supra 69 N.J. at 30].
Accordingly, we reverse the order under review and disqualify Colquhoun and the firm in which he is a member from representing Gray in this matter against Commercial Union. Moreover, we direct that none of Colquhoun's work product shall be turned over to succeeding counsel except that which is required to understand the status of the case, taking care not to reveal the Colquhoun firm's strategy, plans or work product. In order that plaintiff will not be harmed by the delay occasioned by this appeal and this ruling substitute counsel for plaintiff may apply to the trial court for such protective orders as may be necessary to extend the discovery period and, if necessary, to insure new counsel that he is not faced with an unduly early trial date. See Reardon, supra, 83 N.J. at 478. We do not retain jurisdiction.