246 N.J. Super. 225 (1991)
587 A.2d 280
JOHN F. MCCARTHY, III AND ROBIN L. MCCARTHY, PLAINTIFFS-APPELLANTS,
v.
JOHN T. HENDERSON, INC., MARGARET A. HENDERSON AND ELAINE PILSHAW, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 1990.
Decided February 21, 1991.
*226 Before Judges O'BRIEN, SCALERA and KEEFE.
Shanley & Fisher, attorney for appellants, (Theodore S. Smith, on the brief).
John Kuhn Bleimaier, attorney for respondents.
The opinion of the court was delivered by KEEFE, J.A.D.
The issue to be decided is whether the law firm of Shanley & Fisher, P.C., who previously represented Benson & Henderson Enterprises, a closely held corporation, is disqualified from representing plaintiffs John F. McCarthy, III and Robin McCarthy in litigation brought against another closely held corporation, defendant John T. Henderson, Inc., and two of its employees because the principal shareholders and officers of both *227 corporations are the same. The trial judge held that the firm was disqualified under R.P.C. 1.9(a)(2) and further refused to erect a "Chinese wall" to screen the attorneys in Shanley & Fisher who represented Benson & Henderson Enterprises from the attorneys in the same firm who now represent the plaintiffs. We conclude from our analysis of the Rules of Professional Conduct and the facts of this case that there is no actual conflict of interest evidenced by these facts and that the facial appearance of conflict is no more than a "`fanciful possibility'" without any "`reasonable basis'". Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 216, 536 A.2d 243 (1988), quoting from Higgins v. Advisory Committee on Professional Ethics, 73 N.J. 123, 129, 373 A.2d 372 (1977). Thus, we reverse the judgment under review.
John T. Henderson and defendant Margaret A. Henderson are the sole shareholders and officers of Benson & Henderson Enterprises (Benson & Henderson) and John T. Henderson, Inc. Benson & Henderson is apparently the owner of a building located in Princeton, New Jersey. John T. Henderson, Inc. is a real estate company.
John F. McCarthy, III, is an attorney and a partner in the firm of McCarthy & Schatzman. McCarthy and his firm personally represented the Hendersons and their corporations since the mid 1960's.
In or about 1979, Benson & Henderson constructed an office building on Witherspoon Street in Princeton. When the construction was nearly completed, the adjacent property owner brought suit against Benson & Henderson and obtained a temporary restraining order against further construction. The plaintiff in that case alleged that Benson & Henderson encroached on plaintiff's property and created a nuisance. For reasons not clear from the record, McCarthy referred the matter to Shanley & Fisher for representation of Benson & Henderson. Arthur R. Schmauder and John D. Clemen, members of the Shanley & Fisher law firm, undertook the defense *228 of Benson & Henderson. Shanley & Fisher was successful in having the temporary restraining order dissolved. The matter subsequently proceeded to trial which resulted in a dismissal of the case against Benson & Henderson at the end of the plaintiff's proofs. The litigation was apparently protracted inasmuch as Shanley & Fisher billed Benson & Henderson $38,000 for legal representation. The file was closed in 1982. Shanley & Fisher did not thereafter represent either Benson & Henderson or John and Margaret Henderson. The only record of the 1979-82 representation remaining in the Shanley & Fisher archives is a card reflecting that the firm represented a company identified as Benson & Henderson Enterprises.
The current litigation was filed by the firm of McCarthy & Schatzman on behalf of the plaintiffs herein in October, 1989. The suit arose out of plaintiffs' efforts to purchase certain real estate in Princeton, using John T. Henderson, Inc. as their agents to effect the purchase. In short, the McCarthys contend that their confidential offer to purchase the property was conveyed by one agent employed by John T. Henderson, Inc. to another member of the agency for the purpose of inducing the second agent's client to bid-up the property. Shortly thereafter, plaintiffs asked John J. Degnan, Esq. of Shanley & Fisher to represent their interests. Shanley & Fisher filed an amended complaint in December 1989. The amended complaint named John T. Henderson, Inc., Margaret A. Henderson, and Elaine Pilshaw as defendants. The amended complaint asserts counts for breach of fiduciary duty, tortious interference with prospective advantage, misrepresentation, fraud and negligence.
Defendants in this action moved to disqualify Shanley & Fisher from representing plaintiffs. The certification in support of the motion for disqualification was signed by John T. Henderson as president of John T. Henderson, Inc. In his certification he claimed: Shanley & Fisher "represented me and my firm" in connection with the boundary dispute litigation; they "became intimately familiar with all the workings of my *229 business;" they "gained confidential knowledge of its operation," and two partners in the firm "worked very closely with me and my wife...." Henderson concluded that those facts indicated a "real appearance of impropriety."
Mr. Henderson did not specify which of the two relevant corporations he was referring to in the certification. However, the trial judge concluded from the record before him, and we agree, that Shanley & Fisher learned nothing about the operations of the realty company known as John T. Henderson, Inc., Moreover, the record does not reveal any basis to conclude from the prior representation of Benson & Henderson Enterprises, that Shanley & Fisher also represented the Hendersons personally.
The trial judge found that Shanley & Fisher, during the course of the Benson & Henderson litigation,
learned a fair amount of information about Mr. Henderson. Not necessarily in how his business works, and I don't think there has to be any similarity between the types of actions, I really don't see any, but I do believe that it is very probable, very likely that the attorneys from Shanley & Fisher learned things about Mr. Henderson in terms of his thinking, his decision making process, how he evaluates matters, how he approaches the settlement or the further prosecution of a claim.
The trial judge concluded from the foregoing, and relying on RPC 1.9(a)(2), that Shanley & Fisher should be disqualified because it had "information which could be used adversely against the interests of Mr. Henderson."
There is no case in this State,[1] and indeed we have found none in other jurisdictions, which precisely addresses this issue under the current Rules of Professional Conduct or the predecessor Disciplinary Rules. We agree with the trial judge that the focus of the inquiry is an interpretation of RPC 1.9, "Conflict of Interest: Former Client." However, we disagree with his interpretation of the rule.
RPC 1.9 provides:

*230 (a) a lawyer who has represented a client in a matter shall not thereafter:
(1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client; or
(2) use information relating to the representation to the disadvantage of the former client except as RPC 1.6 would permit with respect to a client or when the information has become generally known.
(b) The provisions of RPC 1.7(c) are applicable as well to situations covered by this rule.
The initial question to answer when applying the rule is to determine the identity of the "former client." "Central to compliance with many of the lawyer's obligations to the client, such as the duty to maintain confidences, see A.B.A. Model Rule 1.6, and the duty of undivided loyalty, see A.B.A. Model Rules 1.7, 1.8, 1.9, 1.10, 2.2, is an identification of `the client'". American Bar Association, Annotated Model Rules of Professional Conduct, comment to R. 1.13, p 142.[2]
Shanley & Fisher argues that the former client was Benson & Henderson, not John T. Henderson, and, because Benson & Henderson is not a party to the present litigation, the rule is inapplicable.
The word "client" is not defined in the rule. However, RPC 1.13(a) provides: "a lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents." Indeed, a lawyer who represents such an organization may represent "any of its directors, officers, employees, members, shareholders or other constituents," but only subject to the provisions of RPC 1.7, the general rule applicable to conflicts of interest and appearances of conflict. See, RPC 1.13(e). The rule does not specifically provide for any exceptions simply because the corporation is closely held. Clearly *231 then, a literal application of RPC 1.13 requires a determination that Benson and Henderson and not John T. Henderson was the "former client" of Shanley & Fisher in the period 1979-1982. Under this analysis neither RPC 1.9(a)(1) or (2) would apply, because plaintiffs' interest in the current litigation are not "materially adverse to the interests of the former client", Benson & Henderson, since Benson & Henderson is not a party to this litigation.
We are aware of only two instances in which a court has disregarded the corporate form and determined that the principals of the corporation were indistinguishable from the corporation itself for the purpose of determining who the client was in the context of the propriety of successive representation by counsel. In re Brownstein, 288 Or. 83, 602 P.2d 655 (1979); In re Banks, 283 Or. 459, 584 P.2d 284 (1978). However, the facts of those cases are considerably different from the facts here. In those cases the attorney represented not only the closely held family corporation but also performed personal services on behalf of the principals and the representation was on more than one occasion. Contra. Meehan v. Hopps, 144 Cal. App.2d 284, 293, 301 P.2d 10, 15 (1956) (Attorney not disqualified from representing the corporate receiver in an action against the former executive officer of the corporation who had in the past a large amount of individual control over the corporation even though the attorney drew the contract of employment when the defendant became the president of the corporation on the theory that the attorney never personally represented the president.) The record in this case reveals no evidence that Shanley & Fisher ever undertook personal representation on behalf of the Hendersons, nor is there any evidence from which one could reasonably conclude that the Hendersons believed that Shanley & Fisher was acting on their behalf as well as on behalf of Benson & Henderson.
We realize that the inquiry into the definition of the scope of a client-lawyer relationship does not end by analyzing the wording of RPC 1.9(a) standing alone. Subparagraph (c) of *232 RPC 1.7 was added to the ABA model rule by our Supreme Court when the RPCs were adopted. Its purpose is to retain the "appearance of impropriety" doctrine in situations covered by RPC 1.9. Dewey, supra, 109 N.J. at 214, 536 A.2d 243.
In Dewey the issue was different from the one here; the Court was inquiring into whether attorney Weiss had represented Brown & Williamson when he was a partner in his former law firm. To resolve the question in the absence of a definition for the word "represented" in RPC 1.9, the Court resorted to the "appearance of impropriety" analysis as set forth in RPC 1.7(c)(2). In contrast, the main issue here, as we said before, is whether John T. Henderson and Margaret Henderson, individually, were the clients of Shanley & Fisher during the earlier litigation.
Unlike the situation in Dewey, the RPCs and case law, as we explained earlier, provide guidance to the definition of "client" in these circumstances. Nonetheless, it is apparent to us that, even though we have concluded the Hendersons were not clients of Shanley & Fisher during the Benson & Henderson litigation, RPC 1.9(b) mandates that we inquire into whether Shanley & Fisher's prior representation of Benson & Henderson would lead "`an ordinary knowledgeable citizen acquainted with the facts'" to conclude that the Hendersons, individually, should be considered former clients of Shanley & Fisher despite the provisions of RPC 1.13. Dewey, supra, 109 N.J. at 216, 536 A.2d 243.
"The `appearance' of impropriety must be something more than a fanciful possibility. It must have a reasonable basis." Higgins v. Advisory Committee on Professional Ethics, supra, 73 N.J. at 129, 373 A.2d 372, quoted with approval in Dewey, supra, 109 N.J. at 216, 536 A.2d 243. The conclusion must be based upon a careful analysis of the record. Dewey, supra, 109 N.J. at 220, 536 A.2d 243. Without such an analysis, the appearance of impropriety standard, as one court put it,

*233 serve[s] as a substitute for analysis rather than as a guide to it. It is easier to find a "doubt" than to resolve difficult questions of law and ethics. The disruption and prejudice that befall a client whose counsel is disqualified are reasons to avoid a hasty conclusion in favor of disqualification, based merely on a "doubt" about the propriety of the representation.
Realco Services, Inc. v. Holt, 479 F. Supp. 867, 872 n. 4 (E.D. Pa. 1979).
As stated earlier, Shanley & Fisher in fact did not perform any personal services for the Hendersons during the course of representing Benson & Henderson in the 1979-82 litigation. Moreover, the Hendersons could not reasonably believe that Shanley & Fisher was their personal counsel at that time because, (1) Shanley & Fisher was engaged specifically to defend Benson & Henderson, (2) McCarthy remained their personal attorney and corporate attorney in other matters, and (3) the Hendersons were not parties to the Benson & Henderson Enterprises litigation.
The trial judge based his disqualification decision on the conclusion that Shanley & Fisher "learned things about Mr. Henderson in terms of his thinking, his decision making process, how he evaluates matters, how he approaches the settlement or the further prosecution of a claim." However, Henderson's own certification fails to make that claim. Rather, Henderson claimed only that Shanley & Fisher worked "very closely" with him and his wife, "became intimately familiar with all the workings of [his] business," and "gained confidential knowledge of its operation." Henderson did not say that Shanley & Fisher gained any personal information from Henderson, such as found by the trial judge, that arguably would carry over from case to case, regardless of the subject matter.
Furthermore, Henderson failed to identify the "business" about which Shanley & Fisher gained knowledge. Clearly, the only relevant "business" for the purpose of this suit would be the defendant realty company because that was the only business entity named in the current litigation. The Shanley & *234 Fisher certifications denied any knowledge of the inner-workings of the realty company, and the trial judge properly concluded that no knowledge of that business was gained by Shanley & Fisher during the earlier representation.
In the absence of a more specific claim by Henderson, it is inappropriate to assume that Shanley & Fisher gained the type of personal information from Henderson characterized by the trial judge. We cannot help but observe that the 1979-82 litigation was a one-time representation that occurred over eight years before the current law suit began and the subject matter in that case was totally different from the one in the case under consideration. There is no reason to conclude that the issues in the earlier litigation would generate the type of broad, philosophical discussion between Henderson and Shanley & Fisher that would lead to a revelation of Henderson's personal views concerning litigation in general or his attitude toward negotiations and settlement. As a matter of fact, the only evidence contained in the record on this point is that Benson & Henderson litigated its case to conclusion. Thus, there is no reason to assume that settlement negotiations took place at all. But even if such negotiations took place, without proof to the contrary, it is just as plausible to conclude that the discussions between Mr. Henderson and the Shanley & Fisher attorneys concerning settlement focused solely on liability issues presented by the peculiar facts of that case as it is to conclude that there was a philosophical discussion concerning Henderson's general attitudes toward litigation and settlement strategy.
As hard as the defendants try to fit their foot into the shoe, this case is a far cry from Gray v. Commercial Union Ins. Co., 191 N.J. Super. 590, 468 A.2d 721 (App.Div. 1983). In Gray, the disqualified attorney admittedly had a long-standing client relationship with Commercial Union under circumstances in which, as the client actually alleged, the attorney became familiar with his client's "claims and litigation philosophy and its methods and procedure in handling or defending claims and litigation, and had access to individuals and information regarding the *235 administration of various of [Commercial Union's] business operations." Id. at 597, 468 A.2d 721.
In addition to the foregoing, an informed and reasonable person being apprised of these facts would also have to consider the fact that McCarthy, the person who probably best knows the Hendersons' litigation philosophy and attitudes and who clearly has the right to participate fully in this case as a litigant, can impart that information to whomever represents him in this litigation without any fear of violating the RPCs.
Thus, our analysis of the record leads us to the conclusion that there is no reasonable basis to conclude that the Hendersons were clients of Shanley & Fisher during the 1979-82 litigation as contemplated by RPC 1.9(b)'s "appearance of impropriety" test. Furthermore, even if the Hendersons were to be considered clients of Shanley & Fisher in the first litigation, there is simply no basis in the record to conclude that any information was conveyed to Shanley & Fisher of the nature that could be used to defendants' disadvantage in the present case which involves wholly unrelated issues. Thus, RPC 1.9 has not been violated.
In view of our conclusion, we need not decide the rejection of the "Chinese wall" proposal advanced by Shanley & Fisher in its motion for reconsideration. Furthermore, defendants' argument that we should not address this appeal at all because the real party in interest is Shanley & Fisher rather than plaintiffs is without merit. R. 2:11-3(e)(1). The fact that Shanley & Fisher is prosecuting this appeal at no charge to plaintiffs does not deprive plaintiffs of standing.
Reversed.
NOTES
[1] Our research included opinions rendered by the New Jersey Supreme Court's Advisory Committee on Professional Ethics.
[2] The RPCs are substantially patterned after the A.B.A. Model Rules. Although our Supreme Court modified the Model Rules in some instances, see infra., the numerical designation and subject matter in the RPCs equates with the numerical designation and subject matter in the Model Rules.