[No. F041425. Fifth Dist. Aug. 25, 2003.]

CLAUDE JESSEN, Plaintiff and Respondent, v.
HARTFORD CASUALTY INSURANCE COMPANY, Defendant and
Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of section III.

702

COUNSEL

Michelman & Robinson, Dean B. Herman and Birgit A. Huber for Defendant and Appellant.

Wilkins, Drolshagen & Czeshinski and James H. Wilkins for Plaintiff and Respondent.

OPINION

**DIBIASO, Acting P. J.**—This appeal is taken from an order denying the motion of appellant Hartford Casualty Insurance Company (Hartford) to disqualify the law firm of Wilkins, Drolshagen & Czeshinski LLP (the Firm) from representing respondent Claude Jessen, doing business as Ethylene Filters.Com (Jessen), in this action against appellant. Respondent's counsel of record, James H. Wilkins, a partner in the Firm, was once an attorney with McCormick, Barstow, Sheppard, Wayte & Carruth (McCormick), where he had represented appellant in numerous matters.

The trial court found that prior orders denying motions by appellant to disqualify Wilkins and the Firm from representing the plaintiffs in two earlier

federal court actions against appellant operated to collaterally estop appellant from disqualifying Wilkins and the Firm in this action. Because we find in the unpublished portion of this opinion that this ruling was erroneous, we will reverse and remand, with directions to the trial court to rehear the motion on its merits and to apply the correct legal standard—the "substantial relationship" test—which we address in the published portion of this opinion. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283–284 [36 Cal.Rptr.2d 537, 885 P.2d 950] (*Flatt*); *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1453–1455 [280 Cal.Rptr. 614] (*Ahmanson*).)

## I.

### A.

Jessen is a named insured under a commercial general liability policy issued by Hartford. Jessen was sued in Fresno County Superior Court by Ethylene Control, Inc., for a variety of alleged business torts. Jessen tendered the defense of the action to Hartford, but Hartford denied coverage. Jessen then sued Hartford for breach of the insurance contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.

Hartford moved to disqualify Wilkins and the Firm on the ground that Wilkins had personally represented Hartford in "no less than *twenty* ... matters" while employed as an associate attorney with McCormick and thus his representation of Jessen in this action violated his duty of loyalty to Hartford. In its moving papers, Hartford presented evidence of the nature and extent of Wilkins's prior representation of Hartford when Wilkins was with McCormick. Wilkins, in opposition to the motion, provided the court with two orders of the United States District Court for the Eastern District of California, issued in separate actions against Hartford by plaintiffs who were represented by Wilkins. Hartford had made unsuccessful attempts in the actions to disqualify Wilkins and the Firm from representing the plaintiffs.

Relying upon the orders entered in the two federal actions, the trial court here denied Hartford's motion to disqualify Wilkins and the Firm. Applying the doctrine of collateral estoppel, the trial court found that "[t]he issue of Wilkins' disqualification from representing clients with adverse interests to that of his former client, [Hartford], has been litigated twice in the [United States District Court]. A determination has been made on the merits that no grounds for disqualification exist."

## B.

Wilkins was an insurance coverage attorney with McCormick from 1984 to 1997. Between 1984 and approximately 1992,[1] Wilkins worked on no less than 17 matters for which McCormick was counsel for Hartford. According to Wilkins, much of his representation of Hartford involved rendering coverage opinions, which consisted of an analysis of the facts and circumstances relevant to a claim as documented in the specific claim file. Although this work may have included contacts with Hartford directly, any such communications were limited to the facts of the particular claim and did not include analysis, review or consideration of Hartford's claim handling procedures and practices. In addition to preparing and signing coverage opinions, Wilkins was counsel of record for Hartford in six insurance-related lawsuits—two bad faith actions, three declaratory relief/coverage actions and one declaratory relief/equitable subrogation action.

According to Hartford, in the course of providing it with representation in the various matters, Wilkins would have (1) personally determined, and advised Hartford about, whether Hartford had a duty to defend and whether the relevant policy provided coverage for the claim, (2) evaluated the existence of any defenses available to Hartford and whether Hartford was estopped from asserting or waiving any of its available defenses, (3) determined whether Hartford should reserve its rights and whether further investigation was required before a decision on the claim was made, (4) evaluated any settlement offers and whether to make a settlement offer, and (5) analyzed the provisions of the Hartford policies that addressed such topics as what constitutes an accident, a personal injury as opposed to an injury to property, an advertising injury, and an intentional act.

According to Wilkins, his representation of Hartford was "limited." He stated Hartford was not "a significant client" of McCormick's. Wilkins also said he never "learned of, obtained or otherwise became aware of confidential information during [his] prior representation of Hartford which could in any way be used adversely to Hartford in this proceeding." He denied undertaking any work in the development, implementation or application of any claims handling practices, strategies or procedures Hartford may have had or put in place during the relevant time frame. He stated that none of the matters for which he provided legal representation to Hartford required analysis or review of Hartford's claim handling practices or procedures, and that "while at [McCormick, he] was not involved in any discussions regarding Hartford's own internal policies, procedures, practices or customs."

---

[1] Wilkins stated he could not remember working on any Hartford matter after the early 1990's. The record supports his recollection. The latest document showing representation of Hartford by Wilkins is dated 1992.

## II.

### A.

■ A motion to disqualify counsel brings the client's right to the attorney of his or her choice into conflict with the need to maintain ethical standards of professional responsibility. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee Oil Change Systems*); *Metro Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1838 [43 Cal.Rptr.2d 327].) The paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar. (*Comden v. Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971]; see also *River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297, 1306 [234 Cal.Rptr. 33] (*River West*).) We review the trial court's decision under the familiar abuse of discretion standard. (*SpeeDee Oil Change Systems, supra,* 20 Cal.4th at pp. 1143–1144.)

■ A trial court's authority to disqualify an attorney derives from the court's inherent power to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5).) An attorney is required to avoid the representation of adverse interests and cannot, "without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." (Rules Prof. Conduct, rule 3-310(E).)

■ For the most part, rule 3-310(E) has been invoked in two situations— where the attorney successively represents clients with potential or actual adverse interests and where the attorney simultaneously represents clients with potential or actual adverse interests. (See *Flatt, supra,* 9 Cal.4th at pp. 283–284.) According to *Flatt,* when the facts involve successive representation, the "governing test requires that the client demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations" in order to obtain the disqualification of the target attorney. (*Id.* at p. 283.)[2] When the facts involve simultaneous representation, the rule of disqualification, "in all but a few instances, ... is a *per se* or 'automatic' one." (*Flatt* at p. 284.)

---

[2] *Flatt* is not a successive representation case; *SpeeDee Oil Change Systems, supra,* 20 Cal.4th at page 1146, reaffirmed the rule.

The present situation involves "successive representation"; the trial court was therefore called upon to apply the "substantial relationship" test in ruling upon Hartford's motion.[3]

■ "The 'substantial relationship' test mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other. Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory ...." (*Flatt, supra,* 9 Cal.4th at p. 283.)[4]

This standard, with its conclusive presumption of knowledge of confidential information, is "justified as a rule of necessity" because " 'it is not within the power of the former client to prove what is in the mind of the attorney. Nor should the attorney have to "engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation." ' [Citations.] The conclusive presumption also avoids the ironic result of disclosing the former client's confidences and secrets through an inquiry into the actual state of the lawyer's knowledge and it makes clear the legal profession's intent to preserve the public's trust over its own self-interest. [Citations.]" (*Ahmanson, supra,* 229 Cal.App.3d at p. 1453.)

We expressed the same thoughts in *River West, supra,* 188 Cal.App.3d at page 1304: "[I]n the usual case when the substantial relationship of the matters is established, the inquiry ends and the disqualification should be ordered. If it were otherwise, a weighing process would be inevitable. The rights of the former client would be lined up against those of the new client, perhaps to the detriment of both. The purpose of the substantial relationship test is to avoid such an inquiry." (See also *Rosenfeld Construction Co. v. Superior Court* (1991) 235 Cal.App.3d 566, 575 [286 Cal.Rptr. 609].)

---

[3] The substantial relationship test originated in *T.C. & Theatre Corp. v. Warner Bros. Pictures* (S.D.N.Y. 1953) 113 F.Supp. 265, 268; it was first adopted by a California appellate court in *Global Van Lines, Inc. v. Superior Court* (1983) 144 Cal.App.3d 483, 489 [192 Cal.Rptr. 609]. (See *City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 324–325 [117 Cal.Rptr.2d 125].)

[4] The Supreme Court in *Flatt* also noted that rule 1.9 of the American Bar Association's Model Rules of Professional Conduct (1989) provided in part, " 'A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter.' " (*Flatt, supra,* 9 Cal.4th at pp. 282–283, fn. 2.)

## B.

This court, in *River West*, described the substantial relationship test as requiring the former client to "show *no more* than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client." If the former client succeeds in doing so, the court "will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation" and it "will not inquire into their nature and extent." (*River West, supra,* 188 Cal.App.3d at pp. 1302–1303, italics added.) The court felt that imposing this low threshold of proof upon the aggrieved client was the best method of enforcing the lawyer's duty of absolute fidelity and of implementing the spirit of rule 3-310(E). (*Id.* at p. 1303.)

The *River West* court referred to the Supreme Court's opinion in *People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 156–157 [172 Cal.Rptr. 478, 624 P.2d 1206] (*Deukmejian*). (*River West v. Nickel, supra,* 188 Cal.App.3d at p. 1303.) In *Deukmejian*, a third party had filed a petition for writ of mandate challenging a specific state statute. The Attorney General, through his deputies, met once with representatives of the state agencies named as respondents and outlined their options with respect to the petition. (*Deukmejian, supra,* 29 Cal.3d at p. 154.) This single conference was the only communication between the Attorney General and the agencies, and the record did not show that any confidential information actually had been disclosed to the Attorney General. (*Id.* at p. 156.) Thereafter, the Attorney General withdrew from representation of the agencies, told them to obtain independent counsel, and initiated his own mandate proceeding against the agencies. (*Id.* at p. 154.) On these facts, the Supreme Court held that the Attorney General was forbidden from proceeding with his mandamus petition because of his prior attorney-client relationship with the state agencies. (*Deukmejian, supra,* 29 Cal.3d at p. 160.)

The court in *Ahmanson, supra,* 229 Cal.App.3d at page 1453, added an element to the substantial relationship test, in part because the *Ahmanson* court found "inherent in the 'substantial relationship' approach" the problem of "just what meaning to give those two words."[5]

---

[5] *Ahmanson* relied primarily upon *Johnson v. Superior Court* (1984) 159 Cal.App.3d 573, 578 [205 Cal.Rptr. 605], and *Global Van Lines, Inc. v. Superior Court, supra,* 144 Cal.App.3d at page 483. (*Ahmanson, supra,* 229 Cal.App.3d at p. 1454.)

"The word 'substantial,' like other nonquantifiable denominators of measurement, is subject to a variety of interpretations. Use of the word 'relationship' implies a connection, but offers no guidance as to what is being connected: subject matters, facts, or issues." (*Ahmanson, supra,* 229 Cal.App.3d at p. 1453.)

This and other perceived difficulties, including the potential for abuse in order to harass or pressure the client or to delay the case, prompted the *Ahmanson* court to put a "pragmatic" definition on the words "substantial relationship" by "focus[ing] upon the nature of the former representation." (*Ahmanson, supra,* 229 Cal.App.3d at p. 1455.) Thus, "the attorney's possession of confidential information will be presumed only when ' "a substantial relationship has been shown to exist between the former representation and the current representation, *and* when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney ...." ' [Citations.] [¶] Under [this] formulation of the test, the courts focus less on the meaning of the words 'substantial' and 'relationship' and look instead at the practical consequences of the attorney's representation of the former client. The courts ask whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation." (*Ahmanson, supra,* 229 Cal.App.3d at p. 1454, italics added.)

Explaining further, the court found " 'reason to differentiate for disqualification purposes between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery for a limited and specific purpose related solely to legal questions.' " (*Ahmanson, supra,* 229 Cal.App.3d at p. 1457.) The *Ahmanson* court felt that its formula protected the confidences of the former client when the " 'attorney has been in a position to learn them' " but did not require disqualification " 'when there is no realistic chance that confidences were disclosed.' " (*Id.* at p. 1455.)

Four years after *River West,* we reaffirmed the principle that the proper standard for assessing disqualification in successive representation cases is the substantial relationship test. (*Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at p. 566.) *Rosenfeld* concerned representation which had occurred some time before the then pending litigation, in a different lawsuit with different parties. (235 Cal.App.3d at pp. 569–572.) Under these circumstances and citing extensively to *Ahmanson,* we concluded that whether a substantial relationship existed between the former and the current representations should be determined by reference to the similarity between the compared cases and the nature and extent of the attorney's

involvement with those cases. (*Rosenfeld*, at p. 576; see also *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 300 [106 Cal.Rptr.2d 906].)

The substantial relationship test has been repeatedly intoned and applied by the Courts of Appeal in a variety of circumstances. (See, e.g., *City National Bank v. Adams, supra*, 96 Cal.App.4th at pp. 325–326; *Fox Searchlight Pictures, Inc. v. Paladino, supra*, 89 Cal.App.4th at p. 300; *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 234 [81 Cal.Rptr.2d 425]; *Adams v. Aerojet General Corp.* (2001) 86 Cal.App.4th 1324, 1331–1332, 1335, 1340 [104 Cal.Rptr.2d 116]; *Frazier v. Superior Court* (2002) 97 Cal.App.4th 23, 29 [118 Cal.Rptr.2d 129]; *Civil Service Commission v. Superior Court* (1984) 163 Cal.App.3d 70, 80 [209 Cal.Rptr. 159]; *Dill v. Superior Court* (1984) 158 Cal.App.3d 301, 304 [205 Cal.Rptr. 671]; *Klein v. Superior Court* (1988) 198 Cal.App.3d 894, 910 [244 Cal.Rptr. 226].)

## C.

■ We agree that the question whether an attorney should be disqualified in a successive representation case turns on two variables: (1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation, and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation. We emphasize, however, the significance of the latter factor in the application of the *Ahmanson* formula. ■ If the relationship between the attorney and the former client is shown to have been direct—that is, where the lawyer was personally involved in providing legal advice and services to the former client—then it must be presumed that confidential information has passed to the attorney and there cannot be any delving into the specifics of the communications between the attorney and the former client in an effort to show that the attorney did or did not receive confidential information during the course of that relationship. As a result, disqualification will depend upon the strength of the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation. This is so because a direct attorney-client relationship is inherently one during which confidential information "would normally have been imparted to the attorney by virtue of the nature of [that sort of] former representation," and therefore it will be conclusively presumed that the attorney acquired confidential information relevant to the current representation if it is congruent with the former representation. (*Ahmanson, supra*, 229 Cal.App.3d at p. 1454; see also *Adams v. Aerojet-General Corp., supra*, 86 Cal.App.4th at p. 1332 [personal involvement in rendering legal advice to client requires disqualification if

compared representations are substantially related]; *River West v. Nickel, supra,* 168 Cal.App.3d at pp. 1302–1303.)[6]

Where the factual presentations of the parties stray into the prohibited world covered by the conclusive presumption, the dispute effectively becomes a "subtle evaluation of the extent to which [the attorney] acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation." (*Ahmanson, supra,* 229 Cal.App.3d at p. 1453.) When this occurs, the base purpose of the conclusive presumption is subverted by what in reality is an "inquiry into the actual state of the lawyer's knowledge" and, as a result, the client's confidences are in danger of disclosure, however inadvertent. (*Ibid.*; see also *Adams v. Aerojet-General Corp., supra,* 86 Cal.App.4th at p. 1338.)

*Deukmejian* is on point. There, the facts demonstrated that the attorney had a personal professional relationship with the prior clients. At the conference with the former clients, the lawyer "outlined the legal posture of the [client] and described four legal options available to [the client]." The Supreme Court described this situation as "a classic attorney-client scenario." (*Deukmejian, supra,* 29 Cal.3d at p. 154.) And, even though the "record ... [did] not reveal whether the [attorney] acquired any knowledge or information from his clients" (*id.* at p. 156), the court nonetheless found disqualification was mandated because the attorney had given the client "legal advice" with respect to the first action, which arose out of the same controversy that produced the second action. (*Id.* at p. 155.)

■ On the other hand, where the former attorney-client relationship is peripheral or attenuated instead of direct, then the presumption will not be applied in the absence of an adequate showing that the attorney was in a position vis-a-vis the client to likely have acquired confidential information material to the current representation. In these circumstances, the relationship between the compared representations shares equal billing with the relationship between the attorney and the former client, and the two aspects of the *Ahmanson* test are assessed in combination in determining whether disqualification is mandated.

■ Therefore, when ruling upon a disqualification motion in a successive representation case, the trial court must first identify where the attorney's former representation placed the attorney with respect to the prior client. If

---

[6] The result in *Ahmanson* is consistent. The subject attorney in *Ahmanson* never had a direct relationship with the complaining plaintiff and alleged former client. Instead in the first representation the attorney counseled a company that was acquired by the plaintiff before the attorney undertook the representation of the defendant in the action in which the disqualification motion was brought. (*Ahmanson, supra,* 229 Cal.App.3d at pp. 1448–1451.)

the court determines that the placement was direct and personal, this facet of *Ahmanson* is settled as a matter of law in favor of disqualification and the only remaining question is whether there is a connection between the two successive representations, a study that may not include an "inquiry into the actual state of the lawyer's knowledge" acquired during the lawyer's representation of the former client. (*Ahmanson, supra,* 229 Cal.App.3d at p. 1453; *Adams v. Aerojet-General, supra,* 86 Cal.App.4th at p. 1332; *City National Bank v. Adams, supra,* 96 Cal.App.4th at p. 327; *River West v. Nickel, supra,* 188 Cal.App.3d at pp. 1302–1303.) However, if the court determines the former attorney was not placed in a direct, personal relationship with the former client, the court must assess whether the attorney was positioned during the first representation so as to make it likely the attorney acquired confidential information relevant to the current representation, given the similarities or lack of similarities between the two.

### III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV.

*Ahmanson* predated *Flatt* and in part posed the question whether the words "substantial relationship" connected "subject matters, facts, or issues." (*Ahmanson, supra,* 229 Cal.App.3d at p. 1453.) Some three years later, the Supreme Court in *Flatt* answered that question by effectively selecting the first of the *Ahmanson* alternatives. (*Flatt, supra,* 9 Cal.4th at p. 283.) According to *Flatt,* a "substantial relationship" exists whenever the "subjects" of the prior and the current representations are linked in some rational manner. (*Ibid.*) In the lexicon of the law, the words "subject" and "subject matter" mean more than the strict facts, claims, and issues involved in a particular action. An example is Code of Civil Procedure section 2017, subdivision (a), a discovery statute, which provides that disclosure may be had of "any matter, not privileged, that is relevant to the subject matter involved ... if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." In applying this provision, the courts have given the words "subject matter" a definition which is "broader than the issues" and is not limited to admissible evidence. (*Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2 Cal.3d 161, 172–173 [84 Cal.Rptr. 718, 465 P.2d 854]; *Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1611 [56 Cal.Rptr.2d 341]; *Laddon v. Superior Court* (1959) 167 Cal.App.2d 391, 395 [334 P.2d 638].) Thus, for discovery purposes, information is relevant to the "subject matter" of an action if the

---

*See footnote, *ante,* page 698.

information might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement. (*Stewart v. Colonial Western Agency, Inc.* (2001) 87 Cal.App.4th 1006, 1013 [105 Cal.Rptr.2d 115]; *Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539, 1546 [39 Cal.Rptr.2d 896].) The extent of the pertinent subject matter can vary with the size and complexity of the particular case (*Pacific Tel. & Tel. Co. v. Superior Court, supra,* 2 Cal.3d at p. 173, fn. 15), and the " 'scope of permissible discovery is one of *reason, logic and common sense.*' " (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1612 [56 Cal.Rptr.2d 341].)

Our concern is that limiting the comparison of the two representations to their precise legal and factual issues might operate unrealistically to the detriment of the first client. Depending upon the nature of the attorney's relationship with the former client, in the office or in the courtroom, the attorney may acquire confidential information about the client or the client's affairs which may not be directly related to the transaction or lawsuit at hand but which the attorney comes to know in providing the representation to the former client with respect to the previous lawsuit or transaction. For example, whether a lawsuit is settled or contested may depend upon a myriad of considerations about the client's affairs which might not be subject to discovery but which nonetheless determine the client's course of action, such as a decision to settle an action or a particular claim or issue because of the potential for unrelated adverse ramifications to the client were the case to go to trial. The same might be true about the client's internal operations or policies, such as one which favors the settlement of lawsuits filed in some locales but not others based upon the client's history or perceptions about the inclinations of juries (or the capabilities of the bench) in the particular venues. Other examples have been found. (See *Global Van Lines v. Superior Court, supra,* 144 Cal.App.3d at pp. 488–489 [as the former general counsel for the former client, the attorney must have "acquired substantial knowledge of the policies, attitudes and practices of [the former client's] management in respect to its entering into and carrying out its agency agreements"]; *Gray v. Commercial Union Ins. Co.* (1983) 191 N.J. Super. 590 [468 A.2d 721, 725–726] [by representation of former client, attorney privy to information about client's claims and litigation philosophy, its methods and procedures in handling and defending claims and litigation, and the strengths and weaknesses of its decision makers]; *Kaselaan & D'Angelo Assocs., Inc. v. D'Angelo* (D.N.J. 1992) 144 F.R.D. 235, 244 [attorney's close contacts with president of former corporate client made attorney privy to confidential information about client's "overall structure and practices"].)

We therefore ascribe to the word "subjects" (*Flatt, supra,* 9 Cal.4th at p. 283) a broader definition than the discrete legal and factual issues involved in the compared representations. We consider the "subject" of a

representation as including information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues. Thus, successive representations will be "substantially related" when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues. (See *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, supra,* 69 Cal.App.4th 223, 236–237 [81 Cal.Rptr.2d 425] [confidential information includes information concerning similar matters which would be useful to the current client in pressing its current claim, including the "identity of all the key decision makers," the "litigation philosophy," and the "organizational structure" of the past client, the "financial impact of pending ... claims" against the client, and the existence and amount of insurance coverage]; *William H. Raley Co. v. Superior Court* (1983) 149 Cal.App.3d 1042, 1047 [197 Cal.Rptr. 232] [confidential information includes information received by the attorney from a third party which " 'will be, or may appear to the person or entity [from whom the information was acquired] to be, useful in the attorney's representation in an action on behalf of the client' "]; *Kaselaan & D'Angelo Assocs., Inc. v. D'Angelo, supra,* 144 F.R.D. at p. 244 [present unfair competition claim and former "employment matters" shared common involvement of former client's employment policies and procedures, hiring and termination criteria, and normal course of action in prosecuting and defending employment claims]; *Gray v. Commercial Union Ins. Co., supra,* 468 A.2d at pp. 723–726 [attorney who had represented former client in personal injury actions was disqualified from representing new client in action for breach of employment contract against former client; though actions did not involve same legal issues or facts, both representations involved operation of former client's claims department].)[10]

We recognize that what we have just articulated is anything but a "bright line" standard, but it does not saddle the trial courts with an impossible task. In many contexts, exacting specificity in the law is unrealistic, so the relevant legal principles are only generally stated and must be applied to individual cases by the exercise of the court's considered judgment based in reason, logic and common sense. (*Lipton v. Superior Court, supra,* 48 Cal.App.4th at p. 1612; see *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, supra,*

---

[10] In *In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 560 [20 Cal.Rptr.2d 132], the attorney had been contacted in 1989 and asked to represent a party in a matter; he declined to do so. It was not until 1992 that the potential client brought a motion to disqualify the attorney's firm from representing another party in the matter. The *Zimmerman* court, applying the substantial relationship test, concluded that the attorney had never represented the party who brought the disqualification motion, so there was no "former" representation of the complaining party by the attorney. This circumstance renders *Zimmerman* inapposite here.

69 Cal.App.4th at pp. 223, 253; see, e.g., *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613] [two or more statutes which relate to the same subject matter must be harmonized insofar as possible for purposes of statutory construction]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779 [79 Cal.Rptr.2d 273] [contract modification within the general subject matter of the contract deemed to have been anticipated by the parties at the time of contracting and thus need not be reduced to writing].) We also accept the possibility, given the realities of present-day law practice and law office management (see *Adams v. Aerojet General Corp., supra,* 86 Cal.App.4th at pp. 1336–1337), of some overinclusion as a necessary byproduct of the paramount solicitude for the maintenance of the public's trust in the fairness of the justice system and in the integrity of the bar manifested by the rule of necessity. (See *SpeeDee Oil Change Systems, supra,* 20 Cal.4th at pp. 1145–1147.)

## DISPOSITION

The order denying Hartford's disqualification motion is reversed. (*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp., supra,* 36 Cal.App.4th at p. 1838 [discretionary error is established when the trial court's decision applies the wrong legal standard]; *Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at p. 576.) The trial court is directed on remand to rehear the motion and, in doing so, to apply the substantial relationship test. (*Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at p. 576.)

Each party shall bear its own costs on appeal.

Buckley, J., and Wiseman, J., concurred.