163 N.J. Super. 529 (1978)
395 A.2d 255
MARGARET REARDON AND DANIEL REARDON, PLAINTIFFS,
v.
MARLAYNE, INC. T/A BEAR BRAKE PALISADES AND GENERAL MOTORS CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 31, 1978.
*532 Mr. Thomas L. Morrissey appeared for defendant moving party (Messrs. Carpenter, Bennett & Morrissey, attorneys).
Mr. John E. Patton appeared for respondent (Messrs. Gaccione, Pomaco, Patton & Beck, attorneys).
BILDER, J.S.C.
This is a motion by a defendant in a product liability suit to force the removal of plaintiffs' attorney (and his firm) from the case on the ground that he is disqualified by virtue of confidences made known to him at an earlier time as an attorney representing that defendant in defense of similar suits.
Defendant General Motors Corporation (GM) is represented by Carpenter, Bennett & Morrissey (CBM), a firm averaging some 19 members and 23 associates, in the defense of a product liability case involving allegations of a faulty automobile braking system. Plaintiffs are represented by the firm of Gaccione, Pomaco, Patton & Beck, one of whose members, John E. Patton (respondent), was employed as an associate of CBM for a period of some ten years, during which time CBM represented GM in the defense of numerous other product liability suits. Respondent left CBM in April *533 1976. The present suit, in which respondent is playing a significant part, was instituted in May 1978.
It is the position of defendant that respondent acquired, or at least that there was a substantial likelihood that he acquired, confidential information such that it would make it improper for him to undertake a representation adverse to GM. Respondent, on the other hand, denies that he received any confidences and contests the propriety of his disqualification. At issue is the extent to which a former associate of a relatively large law firm is disabled from undertaking representations adverse to clients of the former employer.
Although the matter is a novel one in this State, it has been fully treated in other jurisdictions (see, e.g., Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 370 F. Supp. 581 (E.D.N.Y. 1973), aff'd 518 F.2d 751 (2 Cir.1975); Richardson v. Hamilton International Corp., 469 F.2d 1382 (3 Cir.1972), cert. den. 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); American Can Co. v. Citrus Feed Co., 436 F.2d 1125 (5 Cir.1971); Westinghouse v. Kerr-Mc Gee Corp., 580 F.2d 1311 (7 Cir.1978); Fred Weber, Inc. v. Shell Oil Co., 566 F. 2d 602 (8 Cir.1977), cert. den. 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978); Gas-A-Tron of Arizona v. Union Oil Co. of California, 534 F.2d 1322 (9 Cir.1976), cert. den. sub nom. Shell Oil Co. v. Gas-A-Tron of Arizona, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976)), and the principles of law upon which the foreign decisions have been based are well recognized by us.
The obligation of an attorney to preserve the confidences and secrets of a client stands as a bedrock principle of the Anglo-American legal system. It is universally recognized by Canon 4 of the ABA Code of Professional Responsibility and has been codified by our court rules. D.R. 4101. The resolution of the instant case depends upon its application to the particular facts herein involved, viewed in the light of the further admonition of the Canon that attorneys *534 must avoid even the appearance of impropriety. Canon 9 of the ABA Code of Professional Responsibility.
It is clear that an attorney may not appear against a former client in the same litigation. In re Blatt, 42 N.J. 522 (1964). And this is so even where the new representation is by his firm and not the disqualified attorney personally. Opinion No. 313, 98 N.J.L.J. 753 (1975). The application becomes more difficult however when the new representation involves a different case and here the rule has been laid down that an attorney may not appear in substantially related matters. Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562, 570 (2 Cir.1973); American Roller Company v. Budinger, 513 F.2d 982, 984 (3 Cir.1975). The standard was best articulated in T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265 (S.D.N.Y. 1953) where the court said:
"I hold that the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained." (Id. at 268-269)
In the instant case the problem is compounded not only by the existence of the issue of substantial relationship as to the matters involved, but the further complication that the relationship between the attorney and the supposed former client is unclear, for respondent was not GM's attorney nor a member of the firm which respresented it, but rather a young associate. While the standards applicable to associates in large firms are no less stringent than those applied to the members of the firm having actual charge of litigation, the applicability of the rule must be examined in *535 the light of the realities of the associate's relationship to the alleged former representation. This problem was reviewed with some care by Judge Weinstein in Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra.
Silver Chrysler was a suit by a dealer against a manufacturer alleging coercion with respect to the leasehold term in a dealership agreement. Defendant was represented in that matter, and had for many years been represented in dealership matters, by a large firm in which plaintiff's attorney had previously been employed as an associate. In denying a motion to disqualify plaintiff's attorney (and his firm) on the ground he had previously represented defendant in a related matter, the trial judge recognized the realities of an associate's function in a large firm and the relationship of associates with clients. 370 F. Supp. at 588. He also recognized that the use of associate status as a training ground for young lawyers should not result in unnecessary restrictions to those attorneys or their future clients. Id. at 589-590. Rejecting the notion that the mere association should create an imputed knowledge such as would bar future adverse representation, the judge undertook a pragmatic review of the associate's actual participation in the earlier Chrysler representation.
Each case must rest on a close analysis of the facts in the light of the sometimes conflicting policies favoring protection of former client confidences and freedom of new clients to retain attorneys of their choice. [at 587]
Actual activities on specific cases by [the associate] must be demonstrated which would make it reasonable to infer that he gained some information about his former client of some value to his present client. [at 589]
Finding that the associate's involvement in arguably related matters had been peripheral  researching specific points of law  and that the matters in which he had a more significant role involved unrelated issues, the judge found disqualification unwarranted.
*536 In affirming Judge Weinstein the Court of Appeals similarly recognized the role of an associate and of the appropriateness of distinguishing such attorneys from the firm members.
* * * we do not believe that there is any basis for distinguishing between partners and associates on the basis of title alone  both are members of the bar and are bound by the same Code of Professional Responsibility. See Consolidated Theatres v. Warner Bros. Circuit Management Corp., 216 F.2d 920, 927 (2d Cir.1954). But there is reason to differentiate for disqualification purposes between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery for a limited and specific purpose relating solely to legal questions. In large firms at least, the former are normally the more seasoned lawyers and the latter the more junior. This is not to say that young attorneys in large firms never become important figures in certain matters but merely to recognize that some of their work is often of a far more limited variety. Under the latter circumstances the attorney's role cannot be considered "representation" within the meaning of T.C. Theatre Corp. and Emle so as to require disqualification. Those cases and the Canons on which they are based are intended to protect the confidences of former clients when an attorney has been in a position to learn them. To apply the remedy when there is no realistic chance that confidences were disclosed would go far beyond the purpose of those decisions. [Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 518 F.2d 751, 756-757 (2 Cir.1975)]
The principles enunciated in Silver Chrysler are persuasive  indeed compelling. They are fully consistent with the holdings of our courts in cases where the subject of disqualification has been dealt with in different contexts. See In re Braun, 49 N.J. 16 (1967); State v. Rizzo, 69 N.J. 28 (1975); In re Advisory Opinion on Professional Ethics No. 361, 77 N.J. 199 (1978); State v. Lucarello, 135 N.J. Super. 347 (App. Div. 1975), aff'd o.b. 69 N.J. 31 (1975). Their exposition is so thorough as to render their further discussion redundant. The appropriateness of their application to the instant case is patent.

Application of the Law to the Instant Case
Application of these principles of law requires the determination of two questions which will be dealt with seriatim: *537 (1) Are the matters embraced in the present litigation substantially related to those found in earlier matters in which respondent had an involvement? and (2) Was respondent's participation in the earlier representation sufficient to make it fair to apply a presumption that confidences were disclosed to him?

(1) Substantial relationship of the matters

The instant case is one in which it is alleged that the brakes of a 1966 Chevrolet automobile failed, causing the car to crash into a telephone pole with resultant injuries to the driver. Alleging the existence of a defective brake hose, plaintiff has brought this action against Bear Brake, which had repaired the brakes a few months before the accident, and GM, the manufacturer of the car.
While asserting the existence of over 50 actively litigated liability defense cases in the office of CBM during the period of respondent's association with that firm, GM has pointed to two cases in which the issues are said to be particularly related to those in the instant case  Krieger v. General Motors and Morgan v. General Motors. Both are product liability cases involving claims of defects in the brake system. In Morgan plaintiff alleged a defective braking system in a 1967 GMC truck which caused the truck to run into a line of stopped traffic. In Krieger plaintiff alleged a defective braking system in a 1966 Buick which caused the car to go out of control on a steep downgrade and strike a tree. Indeed, Krieger involved a defect of the very nature asserted in the instant case  a defective brake hose.
The striking similarity of the present litigation and the prior cases makes apparent the relationship of issues  both legal and factual. For all practical purposes they are identical. Respondent would avoid the apparent relationship by subtle distinctions as to the make of car, the manufacturer of the defective component or the particular defect in the brake system. In so doing he misapprehends the nature of *538 the ethical problem involved. We are not concerned here with an identity of issues but rather with a reasonable similarity of factual area such as suggests to those familiar with the realities of the legal practice that there is a reasonable probability that client confidences were available touching on matters or considerations which might be relevant to the new litigation. At the very least, any product liability litigation involving an alleged defect in a motor vehicle would seem to meet this test. The striking identity of alleged defects present in this motion is merely an a fortiori case.

(2) Participation in the earlier litigation

Respondent's participation in the Krieger and Morgan cases is evidenced by extracts from the CBM ledger sheets which have been incorporated in an appropriate affidavit. From these ledger sheets it is clear that respondent's role in that litigation was substantial and meaningful. In Krieger he took depositions, attended conferences with respect to trial and pretrial strategy, participated in trial preparation, prepared a trial brief and participated in settlement conversations. In Morgan his participation was similar but greater, including, in addition conferences with GM engineers in preparation for depositions of plaintiff's expert, preparation of an opinion letter to GM and far more extensive preparation of a trial brief.
On the issue of participation, as with that of substantial relationship, we are dealing with an a fortiori case. Far less than this extensive and meaningful activity should give rise to disqualification. Respondent spent ten years in the litigation department of CBM, during which time that firm handled over 50 actively litigated GM defense cases. This extensive involvement in the defense of GM claims must inevitably create such a strong perception on the part of the client  and indeed the public  of knowledge of confidences that the appearance of impropriety must control, whatever the facts. In the instant case respondent admits *539 access to the confidences, he merely denies that in fact he availed himself of that access. In such a situation the client need not prove the knowledge; it is irrebuttably presumed. Government of India v. Cook Industries, Inc., 422 F. Supp. 1057 (S.D.N.Y. 1976), aff'd 569 F.2d 737 (2 Cir.1978); see Silver Chrysler Plymouth v. Chrysler Motors Corp., supra at 756-757; United States v. Standard Oil Co., 136 F. Supp. 345, 353-355 (S.D.N.Y. 1955) (excellent discussion of the inferences which arise under the Canons). And see In re Braun, 49 N.J. 16, 18 (1967).[1]

The Effect of Time
No discussion of the professional responsibilities which result from past relationships can be complete without consideration of the element of time. There may be a point where the passage of time dilutes the significance of the confidences to a point where Canon 4 ought no longer apply. Whether this has occurred in a particular case is, of course, a matter of fact  for the attorney to consider in the first instance and for the court to determine, if necessary, in the ultimate. Relevant considerations in weighing the effect of the time lapse are the general nature of the confidences; the breadth of their application  are they universal to this client or narrowly relevant to the prior involvement; their lasting nature  has the relevant technology or state of the law changed; the extent of the attorney's prior involvement, *540 and the substantiality of the nexus between the matters encompassed in the new litigation and the prior involvement. It would seem that the time span of disqualification ought to be proportional to the strength of the nexus and the extent of the involvement. The stronger the relationship, the longer the disqualification, the weaker the relationship, subject to some minimum interval,[2] the shorter the period.
In the instant case there can be no doubt that the two-year period which elapsed between respondent's departure from CBM and his involvement in the new litigation was insufficient to dilute the application of Canon 4. The institution of the suit is about the only facet of the case that postdates his involvement with GM. The applicable technology and law are the same now as then. The alleged confidences relate to broad principles of GM's approach and practice in the defense and settlement of product liability claims in general and motor vehicle cases in particular. The matters are substantially alike  indeed in some respects identical. Respondent's involvement was meaningful and significant.

Constitutional Issues
Respondent has suggested that a disqualification in this case in furtherance of this court's asserted supervisory powers over his practice of law would violate his constitutional rights. More specifically, he suggests that a disqualification order would be an infringement of free speech, freedom of association, freedom of travel; would be improper regulation of interstate commerce and unlawful restraint of trade, and would amount to a denial of due process and equal protection. There is no merit to these contentions. Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).

*541 Conclusion

I find that respondent Patton, while employed in the defense of GM cases as an associate of CBM, had meaningful involvement in matters substantially related to the instant case; that he had access to client confidences with respect to matters which may well and probably will be involved in the instant case; that if this exposure did not exist in fact, its existence is so probable as to require that Patton be treated as though he had been so exposed, and that he should be disqualified from representing plaintiffs in this case. Patton's argument that he had no actual knowledge of the secrets and confidences of GM, under the circumstances herein involved, is almost irrelevant. Counsel misapprehends the responsibility of attorneys. Emle Industries, Inc. v. Patentex, Inc., supra at 571. We must do more than shun impropriety  we must avoid even the appearance of impropriety. Since Patton is disqualified, as he concedes, his firm is similarly disqualified. See State v. Rizzo, supra 69 N.J. at 30.
Because of the nature of the disqualification, it would be inappropriate for any of Patton's work product to be available for use against GM. I will therefore order that Patton and his firm furnish plaintiffs with a blank substitution of attorney and that plaintiffs' new attorneys shall be provided only with the pleadings and such discovery and correspondence as is required to understand the status of the case but does not disclose the strategy, plans or work product of Patton and his firm.[3] In order that plaintiffs will not be harmed by the delay engendered by this proceeding and this ruling, I will entertain from new counsel such protective orders as may be necessary to extend the discovery period and if necessary to insure new counsel is not faced with an unduly early trial date.
NOTES
[1] Even in the absence of a meaningful participation, one must recognize the reality that client confidences are often involved in the general legal discussions which take place in law offices and that it is not unusual for associates to render assistance to each other for reasons personal to themselves which do not appear on the billing sheets. Such recognition might well lead to a rule which would disqualify an associate who did not appear to have been exposed to confidences for at least some decent interval of time. See In Re Advisory Opinion on Professional Ethics No. 361, 77 N.J. 199, 206 (1978).
[2] See footnote 1.
[3] The propriety of denying substitute counsel the use of the disqualified attorney's work product has been passed upon with approval in First Wisconsin Mtg. Trust v. First Wisconsin Corp., 571 F.2d 390 (7 Cir.1978).