SMALL, P.J.T.C.
Atlantic City seeks to disqualify Miller, Gallagher & Grimley, the successor to its former attorney, Miller & Gallagher, from representing several hundred taxpayers who have filed petitions with the Atlantic County Board of Taxation (“the Board”) challenging their 2009 tax assessments. The Board declined to rule on the challenge, finding that it had no jurisdiction over the issue. *110 Because the Board’s mandate to hear 2009 tax appeals expires on September 30, 2009,1 signed Atlantic City’s Order to Show Cause by way of permitting an appeal from the County Board’s declining to act. See N.J.S.A. 54:3-26 and -26.1, see also N.J.S.A. 2B:13-2(a)(2).
On the return date of the Order to Show Cause, July 31, 2009, after reviewing the certifications and voluminous attachments submitted by the parties as well as their written briefs, I heard oral argument. I ruled that Miller, Gallagher & Grimley was disqualified from representing taxpayers of Atlantic City in challenges to their 2009 tax assessments. Although the same logic would apply to those 2008 matters which are before this court, the attorney of record for Atlantic City in those matters has not joined in this application and my judgment only covers the 2009 matters.
This written opinion, promised at the end of my July 31 bench opinion, supplements and amplifies that ruling.
The facts and the law seem simple and straight forward. It is only the application of the law to these facts that requires careful analysis and the exercise of judgment.
I.
For the tax years 2006 and 2007, Miller & Gallagher represented Atlantic City in the defense of numerous tax appeals. The firm asserts, and there is no contrary proof in the record, that none of the taxpayers it represents in 2009 had filed tax appeals in 2006 or 2007; that none of the properties for which assessment appeals were filed in 2006 and 2007 are properties for which Miller, Gallagher & Grimley have filed 2009 appeals; that none of the matters the law firm handled in 2006 and 2007 were the appeals of taxes on residential (class 2) properties and that all of the 2009 appeals are of residential and small commercial properties dissimilar to those properties whose 2006 and 2007 appeals Miller & Gallagher defended on behalf of Atlantic City. The 2006 and 2007 appeals were from old assessments. In 2008, Atlantic City conducted a court ordered revaluation. All of the 2009 assessments were a carryover or were otherwise derived from the 2008 revalu *111 ation and therefore represented a clean break from the 2006 and 2007 assessments. Although Miller & Gallagher represented Atlantic City in connection with resisting the court ordered revaluation and subsequently finding and hiring the revaluation firm that conducted the revaluation, it had absolutely no role in setting the revaluation assessments.
The municipal expert appraiser that worked with Miller & Gallagher in defending the 2006 and 2007 assessments was Mr. Steinhardt. The municipal expert appraisers who will and are defending the 2008 and 2009 assessments are Mr. Lamicella, a principal of the Certified Valuations, Inc. firm which conducted the revaluation, and its employees.
Atlantic City asserts that in the course of its representation by Miller & Gallagher in 2006 and 2007, Miller & Gallagher as attorney for the City worked with the Mayor and Council and the Tax Assessor, Ms. Hopkins. In order to adequately represent its client, Miller & Gallagher had an attorney-client relationship with the Mayor and Council and Ms. Hopkins in which Miller & Gallagher had confidential communications concerning litigation strategy and settlement parameters which if known or used on behalf of Miller, Gallagher & Grimley’s 2009 tax appeal clients would adversely affect the interest of Atlantic City in defending its 2009 assessments.
Miller, Gallagher & Grimley assert that each year’s assessments constitute a separate cause of action. Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 103, 89 A.2d 385 (1952); Sun Life Assur. Co. of Canada v. City of Orange, 2 N.J.Tax 25, 29 (1980). Furthermore, because of the 2008 revaluation, there was a clean break between the 2007 assessments and the 2008 assessments. Also, since the principal work of challenging and defending tax assessments falls on the outside appraisers and since Atlantic City has employed different outside appraisers for 2008 and 2009 than the one it used in 2006 and 2007, no useful and relevant information heard in Miller & Gallagher’s earlier work will be useful or protected from disclosure in prosecuting the 2009 challenges.
*112 II.
The rules of professional conduct try to draw fair lines to assure that a litigant’s right to freely choose his attorney is balanced, in this instance, with an attorney’s obligation to his former clients. “Resolution of the issue requires us to balance ‘the need to maintain the highest standards of the [legal] profession’ against ‘a client’s right freely to choose his counsel’ ” Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 205, 536 A.2d 243 (1988) (citation omitted).
The issues raised in this matter are governed by R.P.C. 1.9. The parties have discussed R.P.C. 1.11 dealing with successive government and private employment. By its terms that rule is “subject to R.P.C. 1.9.” R.P.C. 1.11(a). Since this ease can be disposed of by analysis of the eases interpreting R.P.C. 1.9, there is no need to separately analyze the facts under the special strictures of R.P.C. 1.11.
Rule of Professional Conduct 1.9 provides that:
(a) A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client’s interests are materially adverse to the interests of the former client unless the former client gives infoimed consent confirmed in wilting.
(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client,
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer, while at the former film, had personally acquired information protected by R.P.C. 1.6 and R.P.C. 1.9(c) that is material to the matter unless the former client gives informed consent, confirmed in wilting.
Notwithstanding the other provisions of this paragraph, neither consent shall be sought from the client nor screening pursuant to RPC 1.10 permitted in any matter in which the attorney had sole or primary responsibility for the matter in the previous film.
(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the repi’esentation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
(2) reveal infoimation relating to the representation except as these Rules would permit or require with respect to a client.
(d) A public entity cannot consent to a representation otherwise prohibited by this Rule.
*113 [R.P.C. 1.9 (emphasis added).]
A lawyer who previously represented a client may not represent in the same or a substantially related matter a person whose interests are materially adverse to those of the former client unless the former client gives informed consent in writing. R.P.C. 1.9(a). And, a public entity is barred from giving consent. R.P.C. 1.9(d). Thus, three elements are necessary in order to create a conflict of interest under R.P.C. 1.9(a): (1) a former client whom the lawyer represented in a matter; (2) a current client whose interests are materially adverse to those of the former client; and (3) a current matter that is the same as or substantially related to the matter in which the lawyer represented the former client.
In addition to R.P.C. 1.9(a), a lawyer is precluded from knowingly representing a client whose interests are materially adverse to a person: (1) who previously had been represented by the lawyer’s former firm in the same or a substantially related matter; and (2) about whom the lawyer had personally acquired material confidential information while employed at the former firm.
Thus, our inquiry turns to whether current and former matters are substantially related so that Miller, Gallagher & Grimley would be disqualified from representation of its current clients against its former client, Atlantic City, under R.P.C. 1.9(a). “One of the most important factors in the assessment is the extent of the attorney’s exposure to information that may be useful in the subsequent representation.” Kevin H. Michels, New Jersey Attorney Ethics § 21:4 at 531 (2009 ed.). The decided cases and advisory opinions prior to the adoption of the Rules of Professional Conduct that have considered whether there was a “substantial relationship” between a present and past representation are relevant today in determining whether current and prior representations are “substantially related” so as to disqualify a lawyer from representing a current client. See New Jersey Attorney Ethics § 21:4 at 533.
Based on examination of the cases and advisory opinions, it appears that current and former matters would be found to be *114 substantially related if: a lawyer was involved in a transaction which provides a cause of action in a current client’s matter during the lawyer’s prior representation of a former client who is now an adverse party to the current client;[2] there is a long-term relationship between a lawyer and his/her former client enabling him/her to acquire knowledge of the client’s internal policies and litigation strategies;[3] and a past and a present ease involve similar legal issues.[4]
Case
Reardon v. Marlayne, Inc., 83 N.J. 460 (1980)
Facts
Prior to joining a new firm that represented the plaintiff in a personal injury case, a lawyer had worked for ten years at the firm that handled the defense of product liability actions on behalf of the automobile manufacturer. During that ten-year period, the lawyer participated in approximately 50 cases involving the automobile manufacturer, including two cases in which a new firm’s client (plaintiff) alleged the existence of defects in a car’s braking system similar to those at issue in Reardon.
Conclusion
The Court observed that disqualification will result when the issues in the past and present cases are “practically the same” or where there is a “patently clear” relationship between them. The Court concluded that the “striking similarity” between the present and the prior litigation involving defective brakes clearly satisfied the “substantial relationship” test. Id. at 475. The Court also noted that the lawyer was familiar with the defense strategy and the strengths and weaknesses of the former corporate client’s decision makers.
*115 Gray v. Commercial Union Ins. Co., 191 N.J.Super. 590 (App.Div.1983)
A lawyer served as personal injury defense counsel for an insurer for a period of approximately 20 years. After the insurer ceased to assign cases to the lawyer, he sought to represent a former employee of the insurer in an employment discrimination action against the company. The court concluded that a substantial relationship existed between a current and a prior representation based on the attorney’s long-term relationship with the prior client and his knowledge of the client’s internal policies and litigation strategies. The court reasoned that a lack of identity between the past and present cases will not permit the lawyer to avoid disqualification if the prior representation gave the lawyer access to the former client’s confidences.
G.F. Inds. v. American Brands, Inc., 245 N.J.Super. 8 (App.Div. 1990)
A corporation sold all of the stock of one of its subsidiaries (a commercial baking company) to a corporate purchaser. Subsequent to that transaction, the purchaser and the former subsidiary sued the corporation for a breach of warranty relating to the condition of the subsidiary’s ovens. As part of its toork as general counsel, the firm had advised the baking company in connection with at least one inspection of the ovens by the Federal Occupational Safety and. Health Administration. The court found that a breach of warranty claim arising out of a corporate acquisition was substantially related to a firm’s long-tom service of 22 years as the acquired company’s general counsel prior to sale of the stock to the corporate purchaser.
N.J. Advisoi'y Comm. op. 686 (Nov. 28,1998)
The inquiring lawyer, while working at his previous firm, had represented medical providers in connection with assigned PIP claims against insurance carriers. He then moved to a firm that defended those carriers against assigned PIP claims. The lawyer conceded that he had acquired knowledge about the settlement parameters that were acceptable to his former clients, which could be used to their detHment in subsequent litigation on behalf of the ca.ni.ers.
The Committee found that there was a factual nexus because “the matters that the inquirer would undertake for the clients of the defense firm are identical in nature to the matters in which he represented the health care providers previously, and the issues between the former and present matters are the same.” Further the Committee concluded that if the lawyer represented. one of the carriers against one of the medical providers for whom he actually had. performed woi'k in the past, the matters would be “substantially related. ”
*116 Current and former matters have been found not to be substantially related if a current matter arises out of a transaction involving real estate owned by a former client but a lawyer’s prior representation did not involve the identical real estate.
Case
McCarthy v. John T. Henderson, Inc., 246 N.J.Super. 225 (App.Div.1991)
Carlyle Towers Condo. Ass’n v. Cross-land Sav., 944 F.Supp. 341 (D.N.J.1996)
Facts
A law firm had represented a corporation in connection with a real estate boundary dispute. The firm later sought to represent a new client in a fraud case against the shareholders of its former client. The alleged fraud involved the bidding process relating to another parcel of real estate.
A law firm represented a newly acquired subsidiary of the bank in connection with the preparation of public offering statement. The firm later sought to represent a condominium association in a suit against the bank arising out of the condominium’s public offering statement.
Conclusion
The court found that the subject matter of the two cases was completely different. Additionally, the court noted that the earlier case was a one-time representation that had occurred over eight years ago before the current suit began. Thus, the firm was not disqualified from representing the new client against its former client.
The court found that the law firm’s prior representation and new representation were not substantially related. The court reasoned that the firm’s representation of the subsidiary had not given the firm “any insight into [the bank’s] concerns, litigation strategy, or other confidential client information which could now be used against [the bank].” Id. at 351.
III.
It might appear that an attorney’s relationship with the assessor is not protected by the attorney-client privilege because the assessor is an independent state officer. N.J.S.A. 54:4-23; See also Freehold Bor. v. WNY Props. L.P./Post & Coach, 20 N.J.Tax 588, 602 (2003) (“local municipal governing bodies or officials may not interfere with the assessor in the performance of his or her duties”) (citation omitted). The relationship between the assessor and the municipal attorney, as is the relationship between the Mayor and Council and the municipal attorney, is protected by the attorney-client privilege. Mobil Oil Corp. v. Township of Greenwich, 20 N.J.Tax 66 (2002).
At oral argument, it was conceded that most appeals of tax assessments are resolved by settlement. That settlement authori *117 ty may or may not be delegated to the assessor. By statute and decided case law, it resides in the Mayor and Council. Rosenberg v. Township of South Orange, 8 N.J.Tax l(Tax), aff'd, 8 N.J. Tax 7 (App.Div.1983) and Clinton Twp. Citizen’s Comm. v. Township of Clinton, 185 N.J.Super. 343, 448 A.2d 526 (Law Div.1982). However, the Tax Court will not accept a settlement unless the assessor agrees. Pressler, Current N.J. Court Rules, comment 4 on R. 8:9-5 (2009). Apparently, the Miller & Gallagher firm settled only one case before the Tax Court during its 2006-2007 representation of Atlantic City. Nevertheless, it must have had the opportunity to discuss settlement parameters and litigation strategy with the Mayor and Council and the assessor. That knowledge alone, even if not consciously used, will give Miller, Gallagher & Grimley insight into the thought process of its 2008 and 2009 adversary acquired during its 2006 and 2007 representation of that client. The fact that the current matters are “different” (different taxpayers, different years, different supporting municipal experts) is of no legal significance.
There is no question that Miller, Gallagher & Grimley is not simultaneously representing Atlantic City and its adversaries. Goldberg v. City of Atlantic City, 4 N.J.Tax 195 (1982). Nor is Atlantic City’s former attorney representing former adversaries in the same matters that it handled for Atlantic City. N.J. Advisory Comm. Op. 614 (July 21, 1981). The test in this ease was spelled out by our Supreme Court in the leading case of Reardon, supra, 83 N.J. at 472, 416 A.2d 852.
These courts have developed and utilized a “substantial relationship” test to effectuate the purposes and principles embodied in the ethical rules governing attorney behavior. This universally adopted standard, first articulated in T.C. Theatre Corp. v. Warner Bros. Pictures, Inc., 113 F.Supp. 265 (S.D.N.Y.1953), was accepted by the trial court herein:
[T]he former client need show no more than that the matters embraced with the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed, to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer’s duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained. [Reardon v. Marlayne, Inc., 163 N.J.Super. 529, *118 584, 395 A.2d 255 (Law Div.1978), (quoting T.C. Theatre, 113 F.Supp. at 268-269).]
[Id. at 472, 416 A.2d 852 (emphasis added).]
Five years later, in finding that the ruling had been codified by the subsequently issued Rules of Professional Conduct, the Advisory Committee stated:
In Reardon v. Marlayne, Inc., 83 N.J. 460[, 416 A.2d 852] (1980), the New Jersey Supreme Court held that an attorney and his firm are disqualified from representing interests adverse to those of a former client of the attorney when the circumstances establish the following:
(1) A prior attorney-client relationship between the former client and the attorney sought to be disqualified;
(2) A substantial relationship or a reasonable perception, from the puMic’s perspective, of a substantial relationship between the subject matter of the present suit and that of cases worked on during the former representation;
(3) Access to relevant confidences of the former client, which may be proven by other than direct evidence, leading to a conclusive presumption of the attorney’s knowledge of such confidences.
83 N.J. at 474[416 A.2d 852].
This raling largely has been codified by Rules 1.9 and 1.10 of the new Rules of Professional Conduct ... [t]he Court in Reardon cautioned that each case must be decided upon a detailed analysis of its own particular facts----
[N.J. Advisory Comm. Op. 564 (August 8, 1985) (emphasis added).]
The following year the committee reiterated the principal that “There is always a possibility, however remote, that confidential information received from the original client may be used to his detriment.”
The Committee then said:
We have stated many times that if there is the slightest doubt as to whether a proposed representation involves such a conflict of interest, or may encompass the use of special knowledge or information obtained through sendee of another client, or necessitates a possible conflict between the interests of a present or former client and those of the attorney, the doubt must be resolved by the attorney taking a definite stand that he cannot serve two masters.
[N.J. Advisory Comm. Op. 579 (February 27, 1985) (quoting N.J. Advisory Comm. Op. 205, 95 N.J.L.J. 451 (1971)).]
In 2004, the doctrine that the appearance of a conflict would automatically (per se) lead to the disqualification of a former attorney being adverse to its former client was eliminated from the rules. In re Supreme Court Advisory Comm. on Prof'l Ethics Opinion No. 697, 188 N.J. 549, 552-53, 911 A.2d 51 (2006). Nevertheless, our Supreme Court went on to explain in the context of that concurrent representation.
*119 [A] lawyer employed or retained by a public entity “shall not undertake the representation of another client if the representation presents a substantial risk that the lawyer’s responsibilities to the public entity would limit the lawyer’s ability to provide independent advice or diligent and competent representation to either the public entity or the client.” At first blush, the considerations relevant for R.P.C. 1.8(k) analysis appear divorced from those that animate the “municipal family doctrine.” However, we retain the “municipal family doctrine” but restricted to the relevant municipal governing body and its subordinate entities. We hold that, as so restricted, “membership” in the “municipal family” establishes a per se “substantial risk that the lawyer’s responsibilities to the public entity would limit the lawyer’s ability to provide independent advice or diligent and competent representation to either the public entity or the client” and, therefore, a per se proscribed conflict of interest.
[Id. at 566, 911 A.2d 51 (emphasis supplied).]
Thus, the best formulation of the test remains that prescribed in Reardon, supra. Its application was best described by Justice Clifford, despite the court’s explicit disavowal of the Reardon v. Marlayne test in Dewey v. R.J. Reynolds, supra., 109 N.J. at 212, 536 A.2d 243. “We conclude that under R.P.C. 1.9 mandatory disqualification is no longer required.” Id. at 215, 536 A.2d 243.
The ethical obligation of every attorney to preserve the confidences and secrets of a client is basic to the legitimate practice of law. Such an obligation is necessary for several reasons. Persons who seek legal advice must be assured that the secrets and confidences they repose with their attorney will remain with their attorney, and their attorney alone. Preserving the sanctity of confidentiality of a client’s disclosures to his attorney will encourage an open atmosphere of trust, thus enabling the attorney to do the best job he can for the client.
[Id. at 217, 536 A.2d 243 (quoting Reardon v. Marlayne, supra, 83 N.J. at 470, 416 A.2d 852).]
Following the analytical and procedural framework prescribed by our Supreme Court in Dewey v. R.J. Reynolds, supra, 109 N.J. at 221-23, 536 A.2d 243,1 find that Miller & Gallagher’s representation of Atlantic City in 2006 and 2007 was substantially related to the representation of taxpayers adverse to the City in 2009. The fact that the matters are not identical is outweighed by the fact that all matters deal with tax assessments in which the issue is the value of real estate. The fact that different experts will be defending Atlantic City in 2009 from those who defended Atlantic City in 2007 and 2006 is outweighed by the fact that the assessor is the same person and the Mayor and Council are performing the same functions, defending Atlantic City’s assessments, as the prior Mayors and Councils of Atlantic City.
*120 The likelihood that Miller & Gallagher was privy to relevant confidences of the Assessor and Mayor and Council with respect to the issues involved which will be useful to the 2009 taxpayers and can be used against the Assessor and Mayor and Council in 2009 is so great that the lawyers must be barred from switching sides in these eases. To rule otherwise would do violence to the confidence and loyalty that the City and Assessor had a right to expect when they hired Miller & Gallagher to represent them in the defense of challenges to 2006 and 2007 tax assessments.
Accordingly, Miller, Gallagher & Grimley may not represent taxpayers who challenge their tax assessments by Atlantic City for the tax year 2009.
An order implementing this opinion accompanies the opinion. N.J.S.A. 2B:13-2d.

 See G.F. Inds. v. American Brands Inc., 245 N.J.Super. 8, 583 A.2d 765 (App.Div. 1990) (holding that a breach of warranty claim arising out of a corporate acquisition was substantially related to a firm's long-term service as the acquired company's general counsel, who had advised the acquired company regarding inspection); see also Home Care Inds. v. Murray, 154 F.Supp.2ffd 861, 870 (D.N.J.2001) (holding that a law firm’s representation of a corporation in a suit relating to enforcement of a severance agreement with the company’s former CEO was substantially related to the firm’s prior consultations with the CEO about the matter that led to his termination);

 Gray v. Commercial Union Ins. Co., 191 NJ.Super. 590, 468 A.2d 721 (App.Div. 1983) (finding a substantial relationship between a current and a prior representation based on the attorney's long term relationship with the prior client and his knowledge of the client’s internal policies and litigation strategies).

 See Kaselaan & D’Angelo Assocs., Inc. v. D'Angelo, 144 F.R.D. 235 (D.N.J. 1992) (rejecting the exclusive focus on the factual similarity between the matters at issue and holding that a past and a present case may be substantially related if they involve similar legal issues).