**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1386-22

STANISLAV ROYZENSHTEYN
and ROMAN GERASHENKO,

     Plaintiffs-Appellants,

v.

PRASHANT PATHAK, CAREY
KURTIN, EKAGRATA, INC.,
ONYX ENTERPRISES CANADA
INC., ONYX ENTERPRISES INT'L
CORP., IN COLOUR CAPITAL,
INC., and J. WILLIAM KURTIN,

     Defendants-Respondents,

and

PRASHANT PATHAK and CAREY
KURTIN,

     Defendants/Third-Party
     Plaintiffs-Respondents,

v.

ONYX ENTERPRISES INT'L CORP.,

     Third-Party Defendant-Respondent.

_____

Argued October 23, 2023 – Decided January 2, 2024

Before Judges Gilson, DeAlmeida, and Berdote Byrne.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-000045-18.

Daniel Ginzburg argued the cause for appellants (The Ginzburg Law Firm, PC, attorneys; Daniel Ginzburg, on the briefs).

Christopher R. Carton argued the cause for respondents Prashant Pathak, Carey Kurtin, Ekagrata, Inc., Onyx Enterprises Canada Inc., In Colour Capital, Inc., and J. William Kurtin (Bowman and Brooke, LLP, attorneys; Christopher R. Carton and Patrick Ferris Lynott, on the briefs).

PER CURIAM

This matter, which is before us for a second time, involves a discovery dispute over who controls the attorney-client privilege of communications with the law firm McCarter & English (McCarter). Plaintiffs Stanislav Royzenshteyn and Roman Gerashenko appeal from a December 1, 2022 order denying their motion to reject a report by a special master and compelling them to produce their communications with McCarter to defendants.

Plaintiffs contend that McCarter had represented Onyx Enterprises Int'l Corp. (Onyx) and plaintiffs jointly in a transaction in which plaintiffs sold the

majority of Onyx's shares. Following an evidentiary hearing, a special master found that McCarter had represented only Onyx, and that McCarter had not represented plaintiffs as individuals in the transaction. The trial court adopted the findings of the special master and, because Onyx had waived the attorney-client privilege, ordered plaintiffs to produce their communications with McCarter to all defendants. Because the findings of fact concerning McCarter's representation are supported by substantial, credible evidence, and because those findings as applied to the law establish that McCarter had represented only Onyx, we affirm.

## I.

Plaintiffs founded Onyx in 2008 as a New Jersey subchapter S corporation. Onyx is engaged in the business of selling automotive after-market products through e-commerce.[1]

From 2008 until 2015, plaintiffs were Onyx's only shareholders and directors. In 2014, plaintiffs explored selling an ownership interest in Onyx to raise capital for the business. During that process, plaintiffs had discussions with defendants Prashant Pathak and Carey Kurtin. In connection with that

---

[1] Onyx's successor in interest by reverse merger is Parts iD, LLC. Because this reverse merger occurred after the transaction giving rise to this appeal, we refer to this party as Onyx.

A-1386-22

potential transaction, Onyx retained McCarter to provide legal advice. David Sorin was the lead attorney at McCarter providing that advice.

The parties eventually reached an agreement for the transaction, and Pathak, through Ekagrata, Inc., an investment company he controlled, and Kurtin established Onyx Enterprises Canada Inc. (OE Canada) and In Colour Capital, Inc. OE Canada then invested $5 million in Onyx in exchange for fifty-two percent of Onyx's outstanding common stock. The parties' agreements were memorialized in several contracts, including employment agreements with plaintiffs.

The transaction closed in July 2015. Following the closing, OE Canada owned the majority of Onyx's shares (fifty-two percent), Pathak and Kurtin became members of Onyx's board of directors, and plaintiffs became minority shareholders of Onyx with new employment contracts.

In 2018, plaintiffs filed a lawsuit related to the transaction. In their second amended complaint, plaintiffs named as defendants Pathak, Kurtin, Ekagrata, In Colour Capital, Onyx, OE Canada, and J. William Kurtin, and alleged various causes of action, including legal and equitable fraud in the inducement, securities fraud, breaches of fiduciary duties, and tortious interference with plaintiffs' prospective economic relationships. Plaintiffs claimed that as part of

4

the 2015 transaction, Onyx was supposed to enter a business relationship with Canadian Tire Corporation (CT Corp.), which plaintiffs believed would greatly expand Onyx's business and profits.

In their answers, defendants made a general denial and asserted counterclaims, alleging that plaintiffs had breached the contract, engaged in shareholder oppression, breached fiduciary duties, been unjustly enriched, and engaged in conversion. Defendants maintain that the CT Corp. relationship was never guaranteed as part of the transaction and that when OE Canada made its investment, Onyx was in deep financial difficulties.

The parties then conducted discovery. During that process, plaintiffs asserted privilege over a wide range of documents and refused to produce those documents. Following various motions and orders, plaintiffs furnished a revised privilege log, listing 1,276 communications over which they asserted the attorney-client privilege. Defendants responded by contending that some of those documents involved communications with attorneys representing Onyx and, therefore, Onyx, not plaintiffs, had the right to assert or waive the privilege.

In July 2019, defendants moved to compel production of the documents listed in the privilege log. On October 25, 2019, the trial court issued an order directing plaintiffs to produce all documents identified on their privilege log.

5

Plaintiffs moved for reconsideration, but the trial court denied that motion in an order entered on December 20, 2019. The trial court also denied plaintiffs' motion for a stay.

Thereafter, we granted plaintiffs' motion for leave to appeal the orders "related to the compelled production of documents over which plaintiffs assert[ed] attorney-client privilege" and entered a stay pending the appeal. On August 6, 2020, we issued an opinion reversing the trial court's October 25, 2019 order and remanding the matter. Royzenshteyn v. Pathak, No. A-1810-19 (App. Div. Aug. 6, 2020). We directed the trial court to conduct an in camera review of the privileged documents and determine which attorneys were representing which clients. Regarding the communications with McCarter, we rejected plaintiffs' claim that they were McCarter's sole client for purposes of the 2015 transaction. Id. at 18. Because we could not conclude whether McCarter represented just Onyx or jointly represented Onyx and plaintiffs on the record of the first appeal, we directed the trial court to address that issue on remand.

On remand, the trial court appointed a special master to conduct a review of the communications on the privilege log and issue a report and recommendation. On March 15, 2021, the special master issued his first report. In that report, the special master found that plaintiffs had properly asserted the

6

attorney-client privilege over communications between plaintiffs and their individual attorneys, members of the firm Reitler, Kailas & Rosenblatt, and Vincent Miletti. The special master also found that for several matters, plaintiffs were jointly represented with Onyx. Accordingly, the special master recommended that Onyx, but not the other defendants, be allowed to see those documents. In his first report, the special master also found that the record was insufficient for him to determine whether McCarter was representing Onyx and plaintiffs jointly. The special master, therefore, directed that he would conduct a plenary hearing and issue a second report focused on that issue.

On August 31, 2021, the trial court entered an order adopting the special master's first report. No party has appealed from that order.

On January 10, 2022, the special master conducted a plenary hearing. One witness testified at that hearing: Sorin. Plaintiffs and defendants also submitted numerous exhibits. After the one-day plenary hearing, the parties submitted post-hearing briefs. In their submission, plaintiffs proffered a certification from Royzenshteyn that disputed Sorin's testimony.

On January 21, 2022, the special master issued a second report addressing whom McCarter represented. The special master refused to consider the Royzenshteyn certification, pointing out that plaintiffs could have called

Royzenshteyn at the plenary hearing but elected not to do so. Instead, the special master considered Sorin's testimony and the exhibits submitted at the plenary hearing.

Based on Sorin's testimony and the exhibits, the special master found that McCarter had represented only Onyx and there was no express or implied attorney-client relationship between McCarter and plaintiffs. The special master found that the exhibits either corroborated Sorin's testimony or did not support plaintiffs' contention that McCarter had represented Onyx and them jointly. In particular, the special master pointed to McCarter's retainer letter. The special master found that the retainer letter clearly identified Onyx as the only client and stated that if any individual were to be represented, there would have to be a written agreement memorializing that representation.

The special master also reviewed and discussed the term sheet related to the transaction, plaintiffs' employment agreements, and the tax ramifications of the transaction. The special master found that there was no "personal representation [of plaintiffs] involved in the tax issues or the indemnity issues" because those issues were "ancillary to the transaction and not stand[-]alone personal concerns of [plaintiffs]." Ultimately, the special master concluded that none of the testimony or exhibits supported a finding of an implied attorney-

client relationship between McCarter and plaintiffs, and that plaintiffs did not carry their burden to prove that they had been individually represented by McCarter. Accordingly, the special master found that McCarter had represented only Onyx, and Onyx therefore controlled the attorney-client privilege concerning communications with McCarter.

Plaintiffs objected to the special master's second report and requested the trial court reject the findings and recommendations in that report. On December 1, 2022, the court held a hearing on the special master's second report. After hearing argument from counsel, the court discussed the evidence supporting the findings by the special master. The court then adopted the special master's findings and recommendations and memorialized its ruling in an order entered that same day. The court's order did not specify what documents plaintiffs were required to produce. Instead, the court's order stated: "Defendants' [m]otion to [c]ompel, dated July 31, 2019[,] is granted." The court also denied plaintiffs' request for a stay pending an appeal.

We granted plaintiffs' request to file an emergent motion and, thereafter, stayed the trial court's December 1, 2022 order pending this appeal.

9

The central and controlling issue on this appeal is whether McCarter had represented Onyx and plaintiffs individually in the 2015 transaction. That question involves factual determinations concerning the scope of McCarter's representation and application of the facts to the law governing attorney-client relationships and privileges. We review the fact findings made by the trial court and the special master to determine whether they are supported by substantial, credible evidence in the record. Pami Realty, LLC v. Locations XIX Inc., 468 N.J. Super. 546, 556 (App. Div. 2021); Little v. Kia Motors Am., Inc., 242 N.J. 557, 593 (2020). We review the law de novo. Pami Realty, 468 N.J. Super. at 556.

A client is "a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or the lawyer's representative for the purpose of retaining the lawyer or securing legal services or advice from [the lawyer] in [the lawyer's] professional capacity." N.J.S.A. 2A:84A-20(3)(a); N.J.R.E. 504. The attorney-client "relationship is governed both by the Rules of Professional Conduct [(RPC)] and the Supreme Court's exclusive jurisdiction to regulate the conduct of attorneys." Kamaratos v. Palias, 360 N.J. Super. 76, 84 (App. Div. 2003) (citing N.J. Const. art. VI, § 2, ¶ 3).

When a corporation retains an attorney, the attorney normally represents "the [corporation] as distinct from its directors, officers, employees, members, shareholders, or other constituents." RPC 1.13(a). There is no exception for closely held corporations. McCarthy v. John T. Henderson, Inc., 246 N.J. Super. 225, 230 (App. Div. 1991). In our opinion on the first appeal, we declined defendants' request to adopt a rule where shareholders in closely held corporations are presumed to hold the privilege individually as distinct from the corporate entity. We continue to decline to make that rule in this opinion.

An attorney representing a corporation "may also represent any of [the corporation's] directors, officers, employees, members, shareholders or other constituents," but each client must give informed consent to "the dual representation" if it would involve "a concurrent conflict of interest." RPC 1.13(e); RPC 1.7(b). In addition, "[i]n dealing with a [corporation]'s directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer believes that such explanation is necessary to avoid misunderstanding on their part." RPC 1.13(d).

An attorney-client relationship "'may be implied "when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the

11

attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance."'" Herbert v. Haytaian, 292 N.J. Super. 426, 436 (App. Div. 1996) (quoting Bays v. Theran, 639 N.E.2d 720, 723 (Mass. 1994)). "[A]n attorney-client relationship is created with respect to a particular matter when . . . the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." Dixon Ticonderoga Co. v. Est. of O'Connor, 248 F.3d 151, 169 (3d Cir. 2001) (quoting Restatement (Third) of the Law Governing Lawyers § 26 (Am. L. Inst., Proposed Final Draft No. 1, 1996)).

"It is well-settled under New Jersey law that communications between lawyers and clients 'in the course of that relationship and in professional confidence' are privileged and therefore protected from disclosure." Hedden v. Kean Univ., 434 N.J. Super. 1, 10 (App. Div. 2013) (quoting N.J.S.A. 2A:84A-20(1)). The attorney-client privilege "generally applies to communications (1) in which legal advice is sought, (2) from an attorney acting in his [or her] capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client." Ibid. The client holds the privilege and may waive it. N.J.S.A. 2A:84A-20; Hedden, 434 N.J. Super. at 15.

The trial court reviewed and analyzed the findings made by the special master and adopted them. In doing so, the trial court found that the documents and testimony supported the finding that McCarter had represented only Onyx. The court also found that any belief by plaintiffs that they were individually represented was unreasonable.

Having reviewed the record in its entirety, we conclude that there is substantial, credible evidence supporting the trial court's finding that McCarter represented only Onyx. There is no evidence that there was an express or implied attorney-client relationship between McCarter and plaintiffs. Plaintiffs contend that the special master erred in declining to consider Royzenshteyn's certification contesting Sorin's testimony. Even assuming the special master was obligated to consider that certification, it would not have undermined the substantial, credible evidence in the record supporting the special master's conclusion.

Onyx waived the privilege concerning the communications with McCarter as to the other named defendants. Therefore, defendants are entitled to receive the McCarter communications that were listed on plaintiffs' privilege log. The trial court's December 1, 2022 order was not clear in identifying those documents. In that regard, defendants acknowledged that while the original

13

privilege log, as revised, included 1,276 documents, the communications with McCarter involved only 493 documents. Accordingly, on remand, we direct the trial court to enter an order expressly identifying by bates numbers the McCarter documents and directing that those documents be produced to all named defendants.

Affirmed and remanded. The stay that we entered is vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14